CARDILLO v CANUSA EXTRUSION ENGINEERING, INC

Docket No. 78738. Submitted April 17, 1984, at Detroit.—Decided September 3, 1985.

Jerry E. Cardillo individually and Jerry Cardillo & Associates, Inc. (collectively referred to as Cardillo) entered into an oral agreement with Canusa Extrusion Engineering, Inc., to find a buyer for the assets of Canusa. If Cardillo found a buyer and the purchase transaction closed, Cardillo would receive an 8% fee on the first $1 million of the sale price and 5% of the balance of the purchase price which exceeded $1 million. Cardillo succeeded in finding a buyer, who purchased the nonrealty assets of Canusa and leased Canusa's building. Cardillo demanded payment of the fee for finding the buyer, but Canusa did not pay. Negotiations between the two sides broke down and Cardillo filed suit against Canusa and others in Oakland Circuit Court seeking damages for breach of an oral contract and intentional interference with contractual relations or, in the alternative, seeking a *quantum meruit* recovery for the reasonable value of the services. Defendants filed a motion for summary judgment arguing that plaintiffs were precluded from recovering a brokerage commission because they were not licensed under the real estate brokers licensing act and that plaintiffs' claims were barred by the provisions of the statute of frauds. The court, Steven N. Andrews, J., denied the motion, finding that a person who does nothing more than find a buyer does not fall within the satutuory definition of a real estate broker and concluded that a finder who was not a broker could recover for services rendered, either in a breach of contract action or, in the alternative, in *quantum meruit* on a traditional common counts basis. The trial court also found that once one party fully carries out an oral agreement by perfor-

REFERENCES FOR POINTS IN HEADNOTES

[1-5] Am Jur 2d, Brokers §§ 6 *et seq.*

Necessity of having real estate broker's license in order recover commission as affected by fact that business sold includes real property. 82 ALR3d 1139.

[6] Am Jur 2d, Restitution and Implied Contracts §§ 91 *et seq.*

See the annotations in the ALR3d/4th Quick Index under topic Restitution and Implied Contracts.

mance, the agreement ceases to be void under the statute of frauds and is, therefore, enforceable. Defendants appealed by leave granted. *Held:*

1. In finding a purchaser for defendants' assets under a commission agreement, plaintiffs were subject to the real estate brokers licensing act and, lacking a license, plaintiffs' suit for compensation must fail.

2. If a contract is void under the statute requiring brokers to be licensed, no recovery may be had in *quantum meruit* for services rendered.

3. In view of the disposition made on the brokers' commission, it is unnecessary to consider whether the oral contract was void under the statute of frauds.

Reversed.

1. BROKERS — REAL ESTATE BROKERS — BROKERS FEE — LICENSES.

A party who brings suit to recover a brokerage fee for finding a buyer for real estate must allege that he is a licensed real estate broker (MCL 339.2512a; MSA 18.425[2512a]).

2. BROKERS — REAL ESTATE BROKERS — LICENSING ACT — SINGLE TRANSACTIONS.

The commission of a single act prohibited by the Michigan statutes defining, regulating and licensing real estate brokers and salesmen constitutes a violation of the statutes; a party cannot avoid the sanctions of the brokers licensing act by claiming that he only engaged in an isolated transaction (MCL 339.2501 *et seq.;* MSA 18.425[2501] *et seq.).*

3. BROKERS — REAL ESTATE BROKERS — LICENSING ACT.

It is generally unnecessary that in a particular tranaction a person performs all functions that are the usual business of a real estate broker to be subject to the broker licensing requirement; sometimes performing just one of the usual functions, such as finding a purchaser, is sufficient to subject the person to the licensing requirement.

4. BROKERS — REAL ESTATE BROKERS — LICENSING ACT — SALES OF BUSINESSES.

The real estate brokers licensing act is not limited to transactions involving real estate but extends also to transactions involving businesses, which are essentially in the nature of personal property (MCL 339.2501 *et seq.;* MSA 18.425[2501] *et seq.).*

5. BROKERS — REAL ESTATE BROKERS — LICENSING ACT — ACTIONS.

A party finding a purchaser for the business assets of another under a commission agreement is subject to the real estate

brokers licensing act and cannot maintain an action, for the collection of his commission without having a brokers license and alleging and proving that he was licensed at the time of the performance of the act or contract (MCL 339.2512a; MSA 18.425[2512a]).

6. CONTRACTS — VOID CONTRACTS — *QUANTUM MERUIT.*

No recovery may be had in *quantum meruit* for services rendered and accepted under a contract that is void under the real estate brokers licensing act (MCL 339.2501 *et seq.;* MSA 18.425[2501] *et seq.).*

*Stern, Milmet, Vecchio, Goll & Carnago, P.C.* (by *Edward M. Kalinka),* for plaintiff.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *James W. Collier, Terrence E. Haggerty,* and *Linda M. Galante),* for defendant.

Before: D. E. HOLBROOK, JR., P.J., and BEASLEY and C. W. SIMON,\* JJ.

BEASLEY, J. In this action for breach of an oral contract, *quantum meruit,* and intentional interference with contractual relations, defendants' motion for summary judgment under GCR 1963, 117.2(3) was denied. After the trial court entered an order to that effect and certified a concise statement of facts and proceedings[1] that was approved as to form by both sides, defendants appeal by leave granted.

Plaintiff Cardillo & Associates, Inc., is a Michigan corporation wholly owned by plaintiff Jerry E. Cardillo. Defendant Canusa Extrusion Engineering, Inc. (Canusa), is a Michigan corporation owned principally by defendant Jack Stott Group, Ltd. (Limited), a Canadian corporation. Defendant

---

\* Circuit judge, sitting on Court of Appeals by assignment.

[1] GCR 1963, 806.3(2). In their concise statement, the parties say that, while not admitting the facts, they are to be assumed to be true for purposes of summary judgment.

Jack Stott was president of both Canusa and Limited.

In the fall of 1978, plaintiffs entered into an oral agreement with defendant Canusa to find a buyer for the assets of Canusa. The terms of the oral agreement were that if plaintiffs found a buyer and the purchase transaction closed, they would receive a fee of 8% of the first $1 million of the sale price and 5% of the balance of the purchase price which exceeded $1 million. Neither Jerry Cardillo nor Cardillo & Associates, Inc., had a real estate brokers licnese.

Beginning in the fall of 1978, plaintiffs expended time and money in an effort to find a buyer for the assets of Canusa. Defendants Canusa and its officers were aware of plaintiffs' efforts and never asked them to cease their efforts or to stop expending time and money in an effort to find a buyer. In March, 1979, plaintiffs brought a prospective buyer, Sifco Industries, Inc. (Sifco), to Canusa. In October, 1979, Canusa and Sifco Consummated a purchase and sale transaction for the assets of Canusa, pursuant to which Sifco agreed to purchase the nonrealty assets of Canusa for $850,000 and to lease Canusa's building for three years at $50,000 per year.

Claiming to have performed their obligations under the oral agreement, plaintiffs demanded that Canusa pay them a fee of $80,000 and/or compensate them for the reasonable value of their services on a *quantum meruit* basis. When defendants did not pay and negotiations broke down, plaintiffs started this suit.

Defendants filed a motion for summary judgment pursuant to GCR 1963, 117.2(3). They argued that plaintiffs were precluded from recovering a brokerage commission because they were not li-

censed under the real estate brokers licensing act,[2] and that plaintiffs' claims were barred by the provisions of the statute of frauds.[3]

The trial court decided that a person who does nothing more than find a buyer does not fall within the definition of a "real estate broker" contained in the statute. Finding that plaintiffs were not real estate brokers and not finding any Michigan cases holding that a mere finder cannot recover for services rendered, the trial judge concluded that plaintiffs had stated a cause of action for breach of contract or, in the alternative, for *quantum meruit* on a traditional common counts bases.

Next, the trial court found that once one party fully carries out an oral agreement by performance, the agreement ceases to be void under the statute of frauds and is, therefore, enforceable. Consequently, defendants' motions for summary and accelerated judgment were denied, and the case was set down for trial on the merits.

On appeal, defendants argue that even if plaintiffs were acting as a "finder", they are precluded by the brokers licensing act from collecting a commission for finding a buyer because they were not licensed as required by the statute. Under Michigan law, a party who brings suit to recover a brokerage fee must allege that he is a licensed real estate broker.[4] Thus, if plaintiffs come within the statutory definition of real estate broker, they cannot recover the commission or finder's fee they sought in the trial court.

[2] MCL 451.201 *et seq.;* MSA 19.791 *et seq.,* now MCL 339.2501 *et seq.;* MSA 18.425(2501) *et seq.*

[3] MCL 566.132; MSA 26.922.

[4] *Krause v Boraks,* 341 Mich 149; 67 NW2d 202 (1954); *Jaenicke v Davidson,* 290 Mich 298; 287 NW 472 (1939); *Curry v West Point Hills, Inc,* 30 Mich App 114; 185 NW2d 907 (1971); MCL 339.2512a; MSA 18.425(2512a).

The legislative history shows that in 1919, the Legislature enacted the brokers licensing act, 1919 PA 306, which was titled "AN ACT to define, regulate, and license real estate brokers, real estate salesmen and business chance brokers and to provide a penalty for a violation of the provisions [of the act]". Section 2 of that act provided in pertinent part:

"A business chance broker within the meaning of this act is any person, firm, partnership association, copartnership or corporation, who for a compensation or valuable consideration sells or offers for sale, buys or offers to buy, or negotiates the purchase or sale or exchange of a business, business opportunity, or the good will of an existing business for others as a whole or partial vocation."

In 1937, the following provision was added to section 3 of the act:

"The commission of a single act prohibited under the Michigan statutes defining, regulating and licensing real estate brokers and salesmen shall constutite a violation thereof." 1937 PA 188.

Thus, a party cannot circumvent the act by claiming that he only engaged in an isolated transaction.[5]

In 1943, the separate definition of business chance brokers was dropped, and the definition of real estate broker was expanded to include:

"A real estate broker within the meaning of this act is any person, firm, partnership association, copartnership or corporation, who with intent to collect or receive a fee, compensation or valuable consideration, sells or offers for sale, buys or offers to buy, appraises or

---

[5] *Curry, supra; Krause, supra.*

offers to appraise, lists or offers or attempts to list, or negotiates the purchase or sale or exchange or mortgage of real estate, or negotiates for the construction of buildings thereon, or who leases or offers to lease or rents or offers for rent any real estate or the improvements thereon for others, as a whole or partial vocation, or who sells or offers for sale, buys or offers to buy, leases or offers to lease, or negotiates the purchase or sale or exchange of a business, business opportunity, or the good will of an existing business for others, or who, as owner or otherwise, engages in the sale of real estate as a principal vocation." 1943 PA 57.

This definition was broader than the earlier definition of business chance brokers because it no longer required that an individual engage in the activity as a "whole or partial vocation" to come within the purview of the statute. This change in the statutory definition was consistent with the 1937 amendment to the statute, which imposed liability even for isolated transactions. In 1979, when this transaction took place, the definition of real estate broker had not been changed significantly.[6] Consequently, we will look to the above quoted 1943 definition in this case.

In 1980, after the transaction at issue here took place, 1919 PA 360 was repealed by 1980 PA 299. The current licensing provisions for real estate brokers can be found at MCL 339.2501 *et seq.;* MSA 18.425(2501) *et seq.* We note that our decision would be the same under the statutory provisions now in effect.

At the outset, we must decide whether plaintiffs are precluded from collecting an agreed upon sales commission by failure to comply with the above quoted brokers licensing act.

For our purposes, the pertinent language in the statute relating to its coverage is: " 'Real estate

_____

[6] See 1975 PA 224, § 2.

broker' means an individual * * * who with intent to collect * * * compensation * * * sells or offers for sale, buys or offers to buy, * * * leases or offers to lease or negotiates the purchase or sale or exchange of a business, business opportunity, or the good-will of an existing business for others". In interpreting this statute, the trial court concluded that a mere finder or middleman is not included in the definition of a broker. We do not agree.

In application of the licensing provisions to a particular fact situation, we look to both the nature of the activities performed and the character of the property involved.[7] One important part of a broker's function is to find a purchaser. To negotiate a purchase or sale connotes a wider, different function than merely to find a purchaser or seller. The statutes contemplate that normally brokers will engage in various activites. But, the statute uses the word "or", not the word "and". Thus, in general, it is unnecessary that in a particular transaction a person perform all functions that are the usual business of a broker. Sometimes, performing one of the usual functions, such as finding a purchaser, will be enough to subject a person to the broker licensing requirement.

In *Smith v Starke*,[8] the Supreme Court remarked that procuring a purchaser of another's property is of the very essence of brokerage services. To find a purchaser of a business for a commission is within the statutory definition of a broker.

Regarding the character of the property covered by the statutory licensing requirement, it is clear that the statute is *not* limited to real estate, but

---

[7] For an interesting analysis of this question, see Weiner, *Broker/Finder: Can You Collect?*, 59 Mich SBJ 330 (1980).

[8] 196 Mich 311, 314; 162 NW 998 (1917), which case is cited with full approval in *Krause, supra.*

extends also to businesses, which are essentially in the nature of personal property. In this connection, it should be noted that while, in the within case, leases of real estate were included in the transaction, we need not and do not rest our decision on that fact. Applied to the within case, we are satisfied that included within the words "business, business opportunity or the good will of an existing business", as used in the statute, is the sale of the assets. We believe that sale of the assets of this engineering company, which included machinery and equipment, is squarely within the statutory meaning of a "business".

In *Krause v Boraks*,[9] the plaintiff, an attorney relying upon an oral agreement to split a real estate commission with a licensed broker, persuaded two of his clients to buy a vendor's interest in a land contract. The Supreme Court said that the plaintiff's service was only to sell the vendor's interest for compensation and, as such, was subject to the brokers licensing law and that, lacking a license, the plaintiff was not entitled to recover as the agreement was void. Specifically, the Supreme Court said:

"Neither niceties of language nor fanciful designations can change the substance or the transaction. There can be no doubt about the proposition that the procurement for another, for compensation, of the sale of a vendor's interest in a land contract is controlled by the so-called brokers' licensing act * * *.

\* \* \*

"But an attorney engaging *solely* in the function of obtaining a prospective purchaser for an interest in realty, in conjunction with a broker, is clearly invading another scope of activity which, in the absence of being licensed so to do, is prohibited by statute. That an attorney is well qualified to engage in such endeavor

[9] *Krause, supra.*

cannot be denied. * * * Plaintiff's services were not within the exemption provision of the statute hereinbefore quoted."[10]

In *Curry v West Point Hills, Inc*,[11] we held that the plaintiff was not entitled to recover under a written agreement for a commission for obtaining mortgage commitments for the defendant because he lacked a broker's license. We held:

"The trial court found that plaintiff was acting as a real estate broker within the meaning of the statutes, *supra,* and that his complaint did not allege that he was a licensed real estate broker and that it did not appear from the complaint why plaintiff should not be licensed * * *.

*          *          *

"The contract on which plaintiff relies for recovery is void and unenforceable as in violation of public policy."[12]

In *Jaenicke v Davidson*,[13] the Supreme Court said:

" 'It is a well-settled principle of law that all contracts which are founded on an act prohibited by a statute under a penalty are void, although not expressly declared to be so.' *In re Reidy's Estate,* 164 Mich 167.

"Neither law nor equity will enforce a contract made in violation of such a statute or one that is in violation of public policy."

In 1980, giving effect to what appeared to be settled law, the Legislature provided:

"A person engaged in the business of, or acting in the capacity of, a person required to be licensed under this article, shall not maintain an action in a court of this

---

[10] *Krause,* 341 Mich 153, 155.

[11] *Curry, supra.*

[12] *Curry,* 30 Mich App 115-116. .

[13] *Jaenicke, supra,* p 304.

state for the collection of compensation for the performance of an act or contract for which a license is required by this article without alleging and proving that the person was licensed under this article at the time of the performance of the act or contract." MCL 339.2512a; MSA 18.425(2512a).

Under this analysis, we would hold that in finding a purchaser for defendants' assets under a commission agreement, plaintiffs were subject to the real estate brokers licensing statute and, lacking such a license, plaintiffs' suit for compensation must fail. We believe this represents both the correct interpretation of the Michigan real estate brokers licensing statute and the majority view concerning this issue.[14] In so holding, we recognize the existence of a minority view,[15] but are not persuaded it should be adopted in Michigan.

In the within case, perhaps more important is the fact that plaintiffs and defendants voluntarily made an oral agreement whereby defendants agreed to pay a commission if plaintiffs found a purchaser for them. Plaintiffs performed their promise, although there was perhaps a misunderstanding regarding the price Canusa was expecting. Nevertheless, defendants stood by and watched plaintiffs' efforts and then reaped the benefits. Based on these facts, plaintiffs also seek recovery in *quantum medruit,* in its present form, as a successor to the traditional common count employed in cases arising out of breach of contract. Unfortunately for plaintiffs, established law does not permit recovery under *quantum meruit* in these circumstances.

The Supreme Court has held that, if a contract is void under the statute requiring brokers to be licensed, no recovery may be had in *quantum*

---

[14] See *Alford v Raschiatore,* 163 Pa Super 635; 63 A2d 366 (1949).

[15] See *Bottomley v Coffin,* 121 RI 399; 399 A2d 485 (1979).

*meruit* for services rendered.[16] Consequently, plaintiffs may not recover on their claim for *quantum meruit,* and the trial court's order denying summary judgment must be reversed.

Since our resolution of this case under the brokers licensing act prohibits plaintiffs from recovering a commission for their services, it is unnecessary for us to consider defendants' alternate theory that the oral contract was void under the statute of frauds.

Reversed.

---

[16] *Krause, supra,* p 157; *Smith v Starke, supra,* pp 313-314; *Mead v Rehm,* 256 Mich 488, 490; 239 NW 858 (1932).