**Innovators' Group, Inc.
v. Riverside
Case No. 11725
Montgomery County, (2nd)
Decided February 5, 1990**
[Cite as 1 AOA 66]

*Neil F. Freund of Freund, Freeze & Arnold, 1000 Talbott Tower, 131 North Ludlow Street, Dayton, Ohio 45402, Attorney for Plaintiff-Appellant,*

*Partick K. Smith, 1408 Talbott Tower, 131 N. Ludlow Street, Dayton, Ohio 45402, Attorney for Defendants-Appellees*

BROGAN, J.

Appellant, The Innovators' Group, Inc. ("I.G. Inc."), appeals from the judgment of the trial court granting summary judgment in favor of Riverside Enterprises, Inc. ("Riverside").

I.G., Inc. filed its complaint against Riverside and its shareholders on Feb. 1, 1989, wherein it alleged six causes of action in the alternative: express contract, *quantum meruit*, promissory estoppel, course of performance, unilateral mistake and fraud. Each cause of action is related to the sale of real estate formerly owned by Riverside and sold to G&M Tool Co. Inc.

The underlying facts of this action are not in dispute. On or about April 7, 1988, Veronica Mitchell, President of Riverside Tool & Die, Inc., ("Tool & Die"), discussed the possible sale of the assets of Tool & Die, as well as the sale of the real estate owned by its parent company, Riverside, with Faye Wenner, Vice-President of I.G., Inc. (Affidavit of Wenner). Tool & Die leased its premises from Riverside. On August 2, 1988, Tool & Die and I.G., Inc. entered into a Standard Seller's Agreement whereby I.G., Inc. was to "solicit a buyer of [Tool & Die]." If I.G., Inc. located a purchaser who actually bought the assets of Tools & Die, then I.G., Inc. became entitled to a commission, or "finder's fee", calculated by the purchase price paid. The agreement expressly encompassed the sale of Tool & Die and made no reference to Riverside.

I.G., Inc. was successful in procuring a buyer for Tool & Die, that being G&M. (See Asset Purchase Agreement). I.G., Inc. was paid its commission, totalling $ 64,723.35, upon completion of the sale.

Of particular interest is a provision in the

Asset Purchase Agreement, executed between G&M and Tool & Die, entitled Conditions Precedent to Buyer's Obligations." That provision reads, in pertinent part:

> The obligations of Buyer to make payment for the assets and to carry out its other obligations hereunder, shall be subject to the fulfillment of the following express conditions precedent on the date of closing:
>
> * * *
>
> f. That a contract acceptable to the buyer has been executed simultaneously with this agreement for the purchase of real estate located at 6192 Webster Street, Dayton, Ohio 45414. [The real estate leased by Tool & Die from Riverside].

A Contract to Purchase Real Estate was executed between Omega Investment Co., the parent of G&M, and Riverside. The Wenner Affidavit discloses that I.G., Inc. procured Omega Investment Co. to purchase the real estate simultaneously with G&M's purchase of the Tool & Die assets. It is undisputed that at no time has I.G., Inc. been a licensed real estate seller or broker in Ohio.

I.G., Inc. sought a commission for the sale of real estate in conjunction with the sale of Tool & Die's assets, alleging that at the time of the execution of the Standard Seller's Agreement, I.G., Inc. was unaware that the real estate in question was owned by Riverside and not Tool & Die. (*See* Wenner Affidavit).

Riverside refused to pay I.G., Inc. the commission, whereupon I.G., Inc. instituted this action.

In its Motion for Summary Judgment, Riverside asserted that I.G., Inc. was foreclosed from recovering upon any of its claims by the real estate brokers statutes, R.C. 4735.01 *et seq.* In essence, Riverside argues that although I.G., Inc. was not licensed as such, its actions constituted those of a real estate broker. In Ohio, only licensed brokers are permitted to engage in actions akin to those taken by I.G., Inc. Those who are unlicensed to act as real estate brokers are statutorily estopped from bringing any action for compensation based upon real estate sales.

In its memorandum contra, I.G., Inc. argued that it did not act as a real estate broker. Rather, it supplied the knowledge and information regarding the location and availability of commercial business opportunities to Tool & Die and to G&M. I.G., Inc. further argued that there existed no substantial connection between the sale of real estate and the sale of business assets and, more particularly, that the sale of assets was not conditioned upon the sale of real estate.

The trial court, in an opinion issued on June 16, 1989, sustained Riverside's Motion for Summary Judgment. This appeal followed.

Appellant's sole assignment of error is as follows:

> THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT, THE INNOVATORS' GROUP, INC. BY SUSTAINING THE DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT ON THE PREMISE THAT SECTION 4735.21 OF THE OHIO REVISED CODE PRECLUDES THE MAINTENANCE OF AN ACTION IN THIS CASE.

Civ. R. 56(C) contains the standard governing our review of the summary judgment in favor of appellees. The rule indicates that summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Upon considering the evidence, reasonable minds can come to but one conclusion, that being adverse to the party against whom the judgment is made. Appellant is entitled to have the evidence construed most strongly in its favor. (*See Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64).

We have previously noted that the instant facts are not in dispute. Therefore, if we are persuaded by appellees' argument that the statutes of Ohio foreclose appellant's claims, we are bound to affirm the judgment of the trial court.

A review of pertinent Ohio statutes governing real estate brokers is in order as they lie at the heart of the instant dispute.

R.C. 4735.01, entitled "Definitions" discloses:

> As used in this chapter:
> (A) "Real estate broker" includes any person, partnership, association, or corporation, foreign or domestic, who for another, whether pursuant to a power of attorney or otherwise, and who for a fee, commission, or other valuable consid-

eration, or with the intention, or in the expectation, or upon the promise of receiving or collecting a fee, commission, or other valuable consideration:

* * *

(7) Directs or assists in the procuring of prospects or the negotiation of any transaction, other than mortgage financing, which does or is calculated to result in the sale, exchange, leasing, or renting of any real estate;

* * *

(J) Any person, partnership, association, or corporation, who, for another, in consideration of compensation, by fee, commission, salary, or otherwise, or with the intention, in the expectation, or upon the promise of receiving or collecting a fee, does, or offers, attempts, or agrees to engage in, any single act or transaction contained in the definition of a real estate broker or foreign real estate dealer, whether an act is an incidental part of a transaction, or the entire transaction, shall be constituted a real estate broker or real estate salesman or a foreign real estate dealer or foreign real estate salesman under this chapter.

R.C. 4735.21, entitled "Proof for right of action; limitation on salesmen" contains the following:

No right of action shall accrue to any person, partnership, association, or corporation for the collection of compensation for the performance of the acts mentioned in section 4735.01 of the Revised Code, without alleging and proving that such person, partnership, association, or corporation was licensed as a real estate broker or foreign real estate dealer.

In the case of *DeMetre* v. *Savas* (1953), 93 Ohio App. 367, the Cuyahoga County Court of Appeals considered an issue analogous to the one at bar, namely: "whether a business broker who sells a going business, the sale of which is conditioned upon the transfer and assignment of a leasehold interest in the premises, becomes subject to the Real Estate Brokers' License Act." (*DeMetre, supra* at 372).

Despite appellant's contention to the contrary, we find that the sale of assets which accompanied the sale of the real estate in question was conditioned upon the sale of that real estate. The four corners of the Asset Purchase Agreement between G&M and Tool & Die unequivocally indicate that G&M's obligation to make the agreed payment for Tool & Die's assets was expressly conditioned upon the simultaneous execution of a real estate contract acceptable to G&M, for the purchase of the real property were Tool & Die was located. (Asset Purchase Agreement.)

The facts of *DeMetre* are likewise analogous to those at bar. In *DeMetre*, the appellate court reviewed the grant of a directed verdict in favor of defendant-appellee, former restaurant owner, who refused to pay plaintiff-appellant, a "business broke", a commission with respect to the sale of the restaurant. As here, appellant in *DeMetre* was not a licensed real estate broker. (*DeMetre, supra* at 368).

The *DeMetre* court explained:

[I]t appears that the buyer was willing to purchase the restaurant business as a going concern, provided he could obtain either a new lease of the premises or a validization and assignment of the old lease * * *.
* * * The agreement of sale was evidenced by a written contract drawn and prepared by defendant's counsel without the knowledge of plaintiff.

* * *

Paragraph 11 of the agreement provides in full as follows:

"11. It is mutually agreed that consent of the lessor of the premises mentioned herein, shall be evidenced by a separate instrument in writing, that *in the event* [369] *the lessor* of the premises mentioned herein *will not consent in writing to the assignment of the lease to the premises* herein described, *this agreement shall be declared null and void* and the deposit made by the buyer herein shall be returned to him." (Emphasis added.) Plaintiff testified that he had procured [the buyer] for the business.

*DeMetre, supra* at 368-369.

The *DeMetre* court affirmed the directed

verdict finding that while the leasehold "formed but one element in the value of the business as a going concern, it was so valuable that the entire transaction was conditioned upon the assignment thereof to the purchaser with the approval of the lessor." (*DeMetre, supra* at 374). The *DeMetre* decision was based upon former General Code Section 6373-25 containing provisions identical to those in R.C. 4735.01(A) and (J), cited *supra.*

In the instant case, G&M viewed the real estate at issue as so valuable that its duty to purchase the assets of Tool & Die was conditioned upon the execution of a real estate sales contract satisfactory to G&M. Further, appellant admits that "[s]imultaneously with [the sale of Tool & Die's assets], I.G., Inc. procured a ready, willing and able purchaser for the real estate owned by Riverside Enterprises, Inc." (Wenner Affidavit Paragraph 10). We therefore conclude that appellant did act as a real estate broker as a matter of law. (For similar cases from other jurisdictions, *See Cardillo* v. *Canusa Extrusion Engineering* (1985), 145 Mich. App. 361; *Thomas* v. *Jarvis* (1974), 213 Kan. 671).

First, we observe that appellant's admission places it squarely within the definition of "real estate broker" set forth in R.C. 4735.01 (A) (7). The "procuring of prospects * * * which does * * * result in the sale * * * of any real estate" qualifies appellant as a real estate broker as a matter of law.

Second, we note that the substantial connection between the sale of Tool & Die's assets and the sale of the real estate, as evidenced by the Asset Purchase Agreement, rebuts appellant's argument that it merely relayed information concerning a business opportunity rather than a real estate venture. Here, "an agency relationship between the seller and broker with the purpose of affecting a juncture between buyers and sellers of real property with an ultimate pecuniary reward to the broker for his part in bringing the parties together * * *" is indicated. *Sandowsky v. Ina* (1986), 31 Ohio App. 3d 246, 248 (citing *State* v. *Rentex, Inc.* (1977), 51 Ohio app. 2d 57, 61).

Having found that appellant acted as a real estate broker under R.C. 4735.01, we next address appellant's assertion that if its claim of express contract is foreclosed by the real estate brokerage statutes, its alternate claims, based "on the principles of 'general assumpsit'" (Appellant's Brief, p. 6), are permissible. We disagree.

We hold that no theory of recovery will support appellant's claims to relief pursuant to the holding in *S.D. Stanson, Inc.* v. *McDonald* (1946), 147 Ohio St. 191. In *Stanson,* the Ohio Supreme Court considered an action for recovery of a commission by a real estate broker who was not licensed. The appellate court permitted recovery to the broker on the theory of "money had and received," stating: "Such an action is based on contract, expressed or implied, and the possession of a license of any kind is not a prerequisite to the maintenance of such an action."

(*Stanson, supra* at 196).

The Supreme Court reversed, holding:

There is no warrant in law for holding that notwithstanding the provisions of [the Real Estate Brokers' Statutes], plaintiff may recover under the theory of money had and received. Where the General Assembly has said there is no right of action, courts are without authority to create one and thus defy the law of the state.

(*Stanson,* supra at 197). (*See also, DeMetre* v. *Savas, supra* and *Sabolsice* v. *Armm Coal Co.,* Lawrence App. No. 1874, June 28, 1989, unreported).

R.C. 4735.21 discloses that "*no right of action* shall accrue to any person" deemed to be a real estate broker. (Emphasis added). Because appellant has acted as a real estate broker, all avenues of relief are foreclosed to it as a matter of law.

Appellant's assignment of error is overruled. The judgment of the trial court will be affirmed.

WOLFF, P.J., and GRADY, J., concur.