GC TIMMIS & COMPANY v GUARDIAN ALARM COMPANY

Docket No. 210998. Submitted May 1, 2000, at Detroit. Decided August 24, 2001, at 9:05 A.M. Leave to appeal sought.

G.C. Timmis & Company brought an action in the Oakland Circuit Court against Guardian Alarm Company, claiming breach of contract, fraudulent misrepresentation, and promissory estoppel. The plaintiff alleged that despite an oral contract requiring the defendant to pay the plaintiff a fee if the defendant acquired a security company contacted by the plaintiff on behalf of the defendant, or purchased the assets of a security company contacted by the plaintiff on behalf of the defendant, the defendant refused to pay the plaintiff the contractual fee after the defendant purchased the assets of security firm MetroCell Security, whose owner was approached by the plaintiff for possible acquisition by the defendant. The defendant moved for summary disposition, arguing that the action is precluded by the real estate brokers licensing act, MCL 339.2501 *et seq.* The court, Jessica R. Cooper, J., denied the motion. The defendant appealed by leave granted.

The Court of Appeals *held*:

The real estate brokers licensing act requires one who negotiates for another the purchase, sale, or exchange of a business, business opportunity, or the goodwill of an existing business to be licensed as a real estate broker. MCL 339.2501(d). The act also provides that one who is required to be licensed under the act shall not maintain an action in state court for the collection of compensation for the performance of an act or contract for which a license is required without alleging and proving licensure under the act at the time of the performance of the act or contract. MCL 339.2512a. In this case, the trial court erred in denying summary disposition for the defendant, given the absence of a genuine issue of material fact regarding whether the plaintiff fell within the scope of the real estate brokers licensing act.

Reversed and remanded.

WHITE, J., dissenting, stated that the trial court correctly denied the defendant's motion for summary disposition inasmuch as genuine issues of material fact remain concerning whether the plaintiff is subject to the real estate brokers licensing act, given the plain-

tiff's contention that it seeks compensation for investment banking services involving advice regarding the home security industry and the identification of appropriate companies for acquisition by the defendant, as opposed to compensation for negotiating the purchase of a business.

BROKERS — REAL ESTATE BROKERS LICENSING ACT — ACTIONS.

One who negotiates for another the purchase, sale, or exchange of a business, business opportunity, or the goodwill of an existing business must be licensed under the real estate brokers licensing act and may not maintain an action for compensation for such services in the absence of such licensure (MCL 339.2501[d], 339.2512a).

*David B. Timmis*, for the plaintiff.

*Seyburn, Kahn, Ginn, Bess, Deitch and Serlin, P.C.* (by *Barry M. Rosenbaum* and *Henry M. Nirenberg*) and *Robert M. Craig*, for the defendant.

Before: M. J. KELLY, P.J., and WHITE and WILDER, JJ.

WILDER, J. Defendant Guardian Alarm Company appeals by leave granted from a trial court order denying its motion for summary disposition brought under MCR 2.116(C)(7), (8), and (10). We reverse and remand.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff G. C. Timmis & Company is a registered investment advisor with the Securities and Exchange Commission and a broker-dealer member of the National Association of Securities Dealers. Defendant Guardian Alarm Company is a Michigan corporation that sells home and commercial security systems. By letter dated October 25, 1995, plaintiff's managing director, Gerald C. Timmis, introduced himself to defendant's chief executive officer, Milton Pierce, and indicated that plaintiff was an investment bank specializing in mergers and acquisitions and capital rais-

ing. Timmis requested to meet with Pierce to discuss defendant's lagging growth rate for the home security industry and to offer plaintiff's services. Timmis and Pierce subsequently met on two different occasions in the fall of 1995 and discussed the services plaintiff could provide, including assisting defendant in acquiring other security companies or their assets. According to plaintiff, in December 1995, the parties reached an oral agreement specifying that plaintiff would receive a success fee for any target company plaintiff contacted on behalf of defendant that was eventually acquired by defendant within two years of the date of termination of the agreement. Defendant denies the existence of any compensation agreement with plaintiff.

After Timmis' meetings with Pierce, Timmis contacted one of plaintiff's clients, the Rao Corporation, which owns MetroCell Security, to discuss the purchase of MetroCell by defendant. Timmis met with the principal of the Rao Corporation, Duane Rao, on a few occasions to discuss the possibility of the sale. Although defendant and MetroCell discussed the possible sale, they were initially unable to agree on a purchase price for the company. However, after further negotiations, on July 3, 1996, defendant purchased MetroCell's assets (security monitoring agreements) for $1.4 million. On February 26, 1997, plaintiff, through its attorney, demanded that defendant pay a success fee for services rendered in accordance with the alleged oral agreement. Defendant refused to pay and on August 5, 1997, plaintiff filed the instant lawsuit.

In its complaint, plaintiff alleged that it entered into an oral agreement with defendant on December 12,

1995, for "the provision of banking services" and that, pursuant to the oral agreement, defendant agreed to pay plaintiff a fee upon defendant's successful purchase of security monitoring agreements from MetroCell. Plaintiff further alleged that defendant engaged in "clandestine and underhanded" negotiations with MetroCell that resulted in defendant's purchase of MetroCell's assets for $1.4 million without notifying plaintiff. Plaintiff asserted claims of breach of contract, fraudulent misrepresentation, and promissory estoppel against defendant, seeking a $70,000 contractual fee for its efforts that resulted in defendant's purchase of the security monitoring agreements from MetroCell. In a first amended complaint, plaintiff also requested "actual damages, exemplary damages and/or treble damages."

Defendant moved for summary disposition pursuant to MCR 2.116(C)(7), (8), and (10), arguing that because plaintiff was not licensed to negotiate the purchase of a business or business opportunity as required by Michigan's real estate brokers licensing act, MCL 339.2501 *et seq.*, it was therefore precluded from maintaining an action for compensation under the alleged oral agreement with defendant. Plaintiff responded that it was not required to be licensed under the act because it was seeking compensation for investment banking services, not for assisting defendant in negotiating the purchase of a business.

Following a hearing, the trial court denied defendant's motion, holding that defendant did not present any documentary evidence or expert testimony to establish that plaintiff engaged in the type of work contemplated by the real estate brokers licensing act. The trial court further noted that even if defendant

had presented the requisite evidence, plaintiff presented documentary evidence (an affidavit and company brochure suggesting that plaintiff's conduct was that of an investment banker) creating a factual dispute regarding whether its conduct was covered by the act sufficient to defeat summary disposition.

Thereafter, plaintiff filed a second amended complaint alleging that (1) the contractual fee, payable upon the purchase of a target company, was to be no less than $100,000, (2) pursuant to the oral agreement, the "success fee" was payable upon the purchase of a target company, and (3) pursuant to the oral agreement plaintiff was entitled to the "success fee," even if the agreement terminated, as long as the transaction was consummated within two years of the date of termination and there was a prior contact with the seller.

Defendant filed an application for leave to appeal the trial court's denial of its motion for summary disposition, and this Court granted leave "limited to the issues raised in the application." *GC Timmis & Co v Guardian Alarm Co*, unpublished order of the Court of Appeals, entered September 28, 1998 (Docket No. 210998).

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998); *Graham v Ford*, 237 Mich App 670, 672; 604 NW2d 713 (1999). A motion for summary disposition

under MCR 2.116(C)(10)[1] tests whether there is fac-
tual support for a claim. In deciding the motion, this
Court must consider the pleadings, affidavits, deposi-
tions, admissions, and any other documentary evi-
dence in a light most favorable to the nonmoving
party to determine whether any genuine issue of
material fact exists that would preclude judgment for
the moving party as a matter of law. *Unisys Corp v
Comm'r of Ins*, 236 Mich App 686, 689; 601 NW2d 155
(1999).

In addition, statutory interpretation is a question of
law subject to review de novo. *Amburgey v Sauder*,
238 Mich App 228, 231; 605 NW2d 84 (1999). The pri-
mary goal of judicial interpretation of statutes is to
ascertain and give effect to the intent of the Legisla-
ture. *Lane v KinderCare Learning Centers, Inc*, 231
Mich App 689, 695; 588 NW2d 715 (1998). The first
criterion in determining intent is the specific language
of the statute. *Id.* Judicial construction is neither nec-
essary nor appropriate where the plain and ordinary
meaning of the statutory language is clear. *Id.*

### III. ANALYSIS

We are required in this appeal to interpret Michi-
gan's real estate brokers licensing act to determine
whether plaintiff's conduct fell within the scope of
the act. As will be discussed, we conclude that plain-
tiff's activities constituted "negotiat[ions] [for] the
purchase or sale or exchange of a business" as con-

---

[1] The trial court's order denying summary disposition does not state on
which subsection the court relied in making its ruling; however, because
the trial court considered documentary evidence in addition to the plead-
ings to conclude that a genuine issue of material fact existed, we review
this claim under MCR 2.116(C)(10).

templated by the act and that, therefore, it was required to procure a real estate brokers license in order to collect fees for its service. Because plaintiff was not licensed in accordance with the statute at the time it engaged in negotiations on behalf of defendant, plaintiff's claim must fail as a matter of law and summary disposition in favor of defendant is appropriate. Accordingly, we reverse the trial court's ruling denying summary disposition and remand to the trial court for further proceedings.

The real estate brokers licensing act provides in pertinent part:

> A person engaged in the business of, or acting in the capacity of, a person required to be licensed under this article, shall not maintain an action in a court of this state for the collection of compensation for the performance of an act or contract for which a license is required by this article without alleging and proving that the person was licensed under this article at the time of the performance of the act or contract. [MCL 339.2512a.]

The act defines "real estate broker" as

> an individual, sole proprietorship, partnership, association, corporation, common law trust, or a combination of those entities who with intent to collect or receive a fee, compensation, or valuable consideration, sells or offers for sale, buys or offers to buy, provides or offers to provide market analyses, lists or offers or attempts to list, or negotiates the purchase or sale or exchange or mortgage of real estate, or negotiates for the construction of a building on real estate; who leases or offers or rents or offers for rent real estate or the improvements on the real estate for others, as a whole or partial vocation; who engages in property management as a whole or partial vocation; who sells or offers for sale, buys or offers to buy, leases or offers to lease, or negotiates the purchase or sale or exchange of a business, business

opportunity, or the goodwill of an existing business for others; or who, as owner or otherwise, engages in the sale of real estate as a principal vocation. [MCL 339.2501(d).]

Under the plain language of the statute, a person meeting the statutory definition of "real estate broker" may not maintain an action to recover a brokerage fee unless it is alleged and proved that such individual is licensed. MCL 339.2512a; *Krause v Boraks*, 341 Mich 149, 153-155; 67 NW2d 202 (1954); *Cardillo v Canusa Extrusion Engineering, Inc*, 145 Mich App 361, 365; 377 NW2d 412 (1985). Because plaintiff failed to allege and prove that it was licensed under the act at the time of its negotiations with MetroCell, plaintiff may not maintain the instant action for compensation if it meets the statutory definition of "real estate broker." *Id.* Thus, the dispositive question is whether plaintiff was acting as a "real estate broker" as defined by the act.

We believe that this Court's decision in *Cardillo* is controlling. In *Cardillo*, the plaintiffs entered into an oral agreement with the defendant to find a purchaser for the defendant's assets. Pursuant to the agreement, if the plaintiffs were successful in finding a buyer and the transaction was consummated, they would receive a commission or finder's fee based on the sale price. *Id.* at 364. Neither of the plaintiffs was a licensed real estate broker. *Id.* After expending time and money to find a purchaser, the plaintiffs "brought" a prospective buyer to the defendant. Eventually this entity agreed to purchase the nonrealty assets of the defendant and to lease the defendant's building for three years. *Id.* Claiming to have performed their obligations under the oral agreement, the plaintiffs demanded that the defendant pay them

the fee on which they had agreed or compensate them for the reasonable value of their services. *Id.* The defendant refused to pay and the plaintiffs filed an action for breach of contract, quantum meruit, and intentional interference with contractual relations. *Id.* at 363-364. The trial court denied the defendant's motion for summary disposition, holding that "a person who does nothing more than find a buyer does not fall within the definition of a 'real estate broker' contained in the statute." *Id.* at 365.

This Court reversed the denial of summary disposition, finding that the plaintiffs' actions in facilitating the sale of the defendant's assets fell sufficiently within the scope of the terms "business, business opportunity or the good will of an existing business" so as to subject the plaintiffs to the licensing provisions in the act. *Id.* at 368. This Court stated:

> In application of the licensing provisions to a particular fact situation, we look to both the nature of the activities performed and the character of the property involved. One important part of a broker's function is to find a purchaser. To negotiate a purchase or sale connotes a wider, different function than merely to find a purchaser or seller. The statutes contemplate that normally brokers will engage in various activities. But, the statute uses the word "or," not the word "and." Thus, in general it is unnecessary that in a particular transaction a person perform all functions that are the usual business of a broker. Sometimes, performing one of the usual functions, such as finding a purchaser, will be enough to subject a person to the broker licensing requirement. [*Id.*]

This Court further noted that the character of the property covered by the statutory licensing requirement "is *not* limited to real estate, but extends also to businesses, which are essentially in the nature of per-

sonal property." *Id.* at 368-369 (emphasis in original). This Court concluded that because the plaintiffs did not possess a valid real estate brokers license in accordance with the statute, the plaintiffs' claim for compensation should be rejected. *Id.* at 371-372.[2]

Applying the principles of *Cardillo* to the instant case, we are satisfied that plaintiff's efforts to secure the sale of MetroCell's security monitoring agreements came squarely within the statute. *Cardillo, supra.* Indeed, plaintiff acknowledged, in a letter sent by plaintiff's attorney to defendant, that Timmis "represented [defendant] in negotiations with the Rao Corporation for the purchase of MetroCell Security over a period of several weeks." Additionally, plaintiff's brochure states that it often engages in transactions requiring it to perform acquisition negotiations. Moreover, the typical roles of investment bankers versus business brokers referred to by the trial court is irrelevant; rather, the appropriate inquiry is on the activities performed by a party and the character of the property involved in a particular case. *Cardillo, supra.* Here, plaintiff found business assets for defendant to purchase, conduct that falls squarely within the definition of activities performed by a "real estate broker" under the act. Notwithstanding plaintiff's assertions that its conduct consisted of "investment banking services" rather than "real estate broker services," it is clear that plaintiff's conduct in attempting to locate business assets for purchase by defendant

---

[2] Although the *Cardillo* Court interpreted the former version of the real estate brokers licensing act (MCL 451.201 *et seq.* was repealed by 1980 PA 299 and replaced with the current statute, MCL 339.2501 *et seq.*), this Court specifically stated that its decision "would be the same under the statutory provisions now in effect." *Cardillo, supra* at 367.

constitutes action of a "real estate broker" as defined by statute.

Plaintiff urges us to follow *Turner Holdings, Inc v Howard Miller Clock Co*, 657 F Supp 1370, 1372 (WD Mich, 1987). In *Turner Holdings*, the federal district court ruled that the plaintiff's activities of "locat[ing] appropriate candidates for acquisition and . . . advis[ing] as to the best way to proceed" did not fall within the scope of the real estate brokers licensing act and, thus, the plaintiff's suit was not barred by § 2512a of the act. *Id.* at 1378. Specifically, the district court found that there was no evidence establishing that the plaintiff was engaged in any activities identified in the act; rather, the plaintiff was hired to provide "conventional investment banking services which are generally not within the expertise of a real estate broker." *Id.* The *Turner Holdings* court distinguished this Court's opinion in *Cardillo* by noting that the plaintiffs in *Cardillo* were hired as a traditional broker to find a buyer for the engineering firm, whereas the duties and responsibilities of the plaintiff in *Turner Holdings* included examining various furniture manufacturers, analyzing their product lines, their financial status and their manufacturing, marketing, and distribution systems. *Id.* at 1377-1378. Thus, the federal district court reasoned that because the plaintiff was advising the defendant on the best use for its surplus cash, a financial, internal, and corporate service traditionally performed by investment bankers, and was not "negotiating" with another entity on behalf of the client, the plaintiff's role differed from the role of a traditional broker in which the plaintiffs in *Cardillo* served and as that term was used in the statute. *Id.*

We reject plaintiff's argument that *Turner Holdings* compels affirmance of the trial court's ruling in this case, because decisions of a federal district court interpreting Michigan law are not binding precedent on Michigan courts. *Ryder Truck Rental, Inc v Auto-Owners Ins Co, Inc*, 235 Mich App 411, 416; 597 NW2d 560 (1999). We further decline to extend the reasoning of *Turner Holdings* to the present case, and reaffirm the *Cardillo* Court's interpretation and application of the statute as correct. As defendant notes, the statute defines activities, not occupations, requiring licensing. Under the plain language of the statute, a person of any occupation, including investment banking, involved in negotiating for a purchase of a business, business opportunity, or goodwill of a business, must obtain a license. MCL 339.2501(d), 339.2512a. Further, the Legislature's exemption of certain professions from the licensing requirements of the statute to the exclusion of other professions, see MCL 339.2503, indicates quite plainly that investment bankers, as a profession, were not intended to be exempt from the licensing requirements when they engage in activities covered by the act. See *Saginaw General Hosp v Saginaw*, 208 Mich App 595, 601; 528 NW2d 805 (1995) ("the express mention of one thing in a statute implies the exclusion of other similar things"). See also *Krause, supra* at 155 (attorney's claim was barred by real estate brokers licensing act where compensation was sought for obtaining a prospective purchaser for an interest in realty, a service covered by the statute; however, attorney would be entitled to compensation for legal services rendered, if any, that were within the exemption provision of the statute).

Lastly, we reject plaintiff's contention that its conduct was excusable under the real estate brokers licensing act because it was an isolated transaction. We note that plaintiff's brochure identifying several transactions in which it engaged in acquisition negotiations on behalf of various clients effectively disproves its claim that the instant matter represented an isolated transaction. Further, the *Cardillo* Court expressly held that "a party cannot circumvent the act by claiming that he only engaged in an isolated transaction." Thus, under the statutory language, even an isolated transaction is squarely within the scope of the statutory prohibition on performing certain services without a license. *Cardillo, supra* at 367.

Therefore, because plaintiff failed to present documentary evidence establishing the existence of a genuine issue of material fact regarding whether its conduct fell within the scope of the real estate brokers licensing act, the trial court erred in denying defendant's motion for summary disposition under MCR 2.116(C)(10).

Reversed and remanded for further action consistent with this opinion. We do not retain jurisdiction.

M. J. KELLY, P.J., concurred

WHITE, J. (*dissenting*). I respectfully dissent. The question is whether the circuit court erred in denying defendant's motion for summary disposition based on the real estate brokers licensing act. Because the documentary evidence submitted below, taken in a light most favorable to plaintiff, showed that there were genuine issues of material fact concerning the applicability of the statutory bar, the court did not err.

MCL 339.2512a provides:

> A person engaged in the business of, or acting in the capacity of, a person required to be licensed under this article, shall not maintain an action in a court of this state for the collection of compensation *for the performance of an act or contract for which a license is required by this article* without alleging and proving that the person was licensed under this article at the time of the performance of the act or contract. [Emphasis added.]

The acts or contracts for which a license is required are set forth in MCL 339.2501(d), which defines "real estate broker." The pertinent part of that definition includes an entity that

> sells or offers for sale, buys or offers to buy, leases or offers to lease, or negotiates the purchase or sale or exchange of a business, business opportunity, or the goodwill of an existing business for others . . . .

The act thus bars plaintiff from maintaining an action to collect compensation for an act in selling or offering to sell, buying or offering to buy, leasing or offering to lease, or negotiating the purchase or sale of a business, business opportunity, or the goodwill of a business, or its performance of a contract involving such an act.

Plaintiff provided an affidavit indicating that it seeks compensation for investment banking services involving advice regarding the home security industry, and the identification of appropriate target companies for defendant to seek to acquire. Plaintiff was to be paid a success fee for any target contacted by plaintiff on defendant's behalf that was eventually acquired within two years of the termination of the parties' agreement. Plaintiff claims that it considered various enterprises in the home security industry, identified and contacted MetroCell as an appropriate target for

defendant, and had extensive discussions with defendant regarding the nature of the industry, strategy, pricing, marketing, and the implications of such an acquisition. Negotiations commenced and were placed on hold. Six months later defendant acquired MetroCell without notifying plaintiff.

Taken in the light most favorable to plaintiff, there is a genuine issue whether plaintiff seeks compensation for the performance of an act or contract for which a license is required by the statute. Plaintiff does not claim compensation for offering to buy MetroCell or for negotiating respecting a sale. Rather, plaintiff seeks compensation for providing information concerning the nature of the industry, the approach defendant should take to strengthen its position in the industry, and the type of business it should attempt to acquire, and for targeting MetroCell as such a business. Regarding the contract, plaintiff asserts that its agreement with defendant contemplated that it would provide such advice and identify appropriate targets, and that it would be entitled to compensation for a target contacted by it that was acquired. Defendant denies that there was any agreement. Accordingly, one cannot properly conclude as a matter of law that if there was a contract, it required plaintiff to be licensed, because, at least, it has not been established that any contract required plaintiff to offer to buy the business or to negotiate the purchase of the business.

I agree that the mere fact that plaintiff is an investment banking company does not exempt it from the requirements of the act if the act is otherwise applicable. Nevertheless, the nature of the services for which

plaintiff seeks compensation is made relevant by the express terms of the act.

Defendant relies on a letter written by plaintiff's former attorney asserting that plaintiff represented defendant in negotiations with MetroCell's parent company. Plaintiff asserts that this characterization was factually inaccurate,[1] and that, in any event, plaintiff performed additional services.

Lastly, *Cardillo v Canusa Extrusion Engineering, Inc*, 145 Mich App 361; 377 NW2d 412 (1985), and the cases cited therein do not compel a different conclusion. Relying on *Smith v Starke*, 196 Mich 311; 162 NW 998 (1917), and *Krause v Boraks*, 341 Mich 149; 67 NW2d 202 (1954), the *Cardillo* Court held that even though the plaintiffs did not negotiate the transaction, "in finding a purchaser for defendants' assets under a commission agreement, plaintiffs were subject to the real estate brokers licensing statute and, lacking such a license, plaintiffs' suit for compensation must fail." *Cardillo, supra* at 371. *Smith* and *Krause* held that finding a purchaser for another's property is of the essence of brokerage services, *Smith, supra* at 314, and that an attorney engaging solely in the function of obtaining a prospective purchaser for an interest in realty, in conjunction with a broker, is acting as a broker. *Krause, supra* at 155. *Cardillo, Smith,* and *Krause* all involved actions to

---

[1] In its brief on appeal, plaintiff cites deposition testimony of defendant's principal, Milton Pierce, in which Pierce answered "no" to the question whether he would classify the dealings he was having with MetroCell through plaintiff as negotiations. Defendant correctly observes that this deposition was not presented to the circuit court in support of plaintiff's response to defendant's motion. However, the deposition was not taken until months after the motion was heard.

recover compensation for the successful procurement of a buyer for identified property.

In the instant case, following *Cardillo*, the majority focuses the inquiry on the activities performed and the character of the property, and then concludes:

> Here, plaintiff found business assets for defendant to purchase, conduct that falls squarely within the definition of activities performed by a "real estate broker" under the act. Notwithstanding plaintiff's assertions that its conduct consisted of "investment banking services" rather than "real estate broker services," it is clear that plaintiff's conduct in attempting to locate business assets for purchase by defendant constitutes action of a "real estate broker" as defined by statute. [*Ante* at 256-257.]

It does not, however, follow from *Cardillo* and the cases discussed therein that plaintiff's conduct in attempting to locate business assets for defendant to purchase constitutes the action of a real estate broker under the statute. I would not equate the finding of a buyer for identified property or assets of the client with the rendering of advice regarding the client's position in its industry and the identification and contacting of business opportunities within the industry that the client might wisely pursue. Here, plaintiff undertook to provide investment advice and to identify and contact appropriate targets for acquisition. *Cardillo* does not characterize these activities as those of a real estate broker under the statute.

Under all the circumstances, I conclude the circuit court did not err in concluding that summary disposition was inappropriate. I would affirm the circuit court's conclusion that genuine issues of material fact remained and remand for further proceedings.