RETIREMENT HOMES OF THE DETROIT ANNUAL
CONFERENCE OF THE UNITED METHODIST CHURCH, INC v
SYLVAN TOWNSHIP

Docket Nos. 78-4664, 78-4665, 43959. Submitted June 21, 1979, at
Detroit.—Decided September 20, 1979. Leave to appeal applied
for.

Petitioner, Retirement Homes of the Detroit Annual Conference
of the United Methodist Church, Inc., is a nonprofit corporation
operating a licensed nursing facility and home for the aged in
Chelsea which has been tax exempt since 1905. Petitioner built,
with money accumulated from gifts, grants and bequests and
earnings from an endowment, a 24-unit apartment complex
near the home for the stated purposes of providing a better mix
of ages at the facility and establishing a more orderly progres-
sion of elderly people through its various facilities. Petitioner
filed for real property and personal property tax exemptions.
The Michigan Tax Tribunal determined that the apartment
complex did not qualify for tax exemptions, holding that the
petitioner's burden of proof of qualification for the exemptions
was beyond a reasonable doubt, and the apartments were not
"inextricably enmeshed in the Retirement Homes' operation"
and were not an integral part of Retirement Homes' scheme.
Petitioner appeals. *Held:*

1. A petitioner for a tax exemption bears the burden of
establishing beyond a reasonable doubt that the class of exemp-
tion claimed was intended by the Legislature, but he need only
prove membership in the exempt class by a preponderance of
the evidence.

2. Real property qualifies for exemption from taxation if: (1)
it is owned and occupied by the exemption claimant; (2) the
exemption claimant is a library, benevolent, charitable, educa-
tional or scientific institution; (3) the claimant is incorporated
under the laws of this state; and (4) the property is occupied by
the claimant for the purposes for which it was incorporated.
The fact that a retirement home is unlicensed is not per se an
indication that the property is not being used for a charitable

References for Points in Headnotes
[1] 29 Am Jur 2d, Evidence § 147.
[2-4] 71 Am Jur 2d, State and Local Taxation § 362 *et seq.*

purpose. The fact that a charitable institution charges a fee to cover the cost of benefits conferred in no way changes a charitable use to a noncharitable one. The apartments are within the petitioner's charitable purpose and, therefore, eligible for an exemption.

Reversed.

1. TAXATION — EXEMPTIONS — BURDEN OF PROOF.

A petitioner for a tax exemption bears the burden of establishing beyond a reasonable doubt that the class of exemption claimed was intended by the Legislature, but he need only prove membership in the exempt class by a preponderance of the evidence.

2. TAXATION — EXEMPTIONS — REAL PROPERTY.

Real property qualifies for exemption from taxation if: (1) it is owned and occupied by the exemption claimant; (2) the exemption claimant is a library, benevolent, charitable, educational or scientific institution; (3) the claimant is incorporated under the laws of this state; and (4) the property is occupied by the claimant for the purposes for which it was incorporated.

3. TAXATION — EXEMPTIONS — CHARITABLE USE — RETIREMENT HOME — EVIDENCE.

The fact that a retirement home is unlicensed is not per se an indication that the property is not being used for a charitable purpose.

4. TAXATION — EXEMPTIONS — CHARITABLE USE — FEE CHARGES.

The fact that a charitable institution charges a fee to cover the cost of benefits conferred in no way changes a charitable use to a noncharitable one.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Robert D. Dunwoodie* and *Ronald S. Holliday*), for petitioner.

*Keusch & Flintoft,* for respondent.

Before: BASHARA, P.J., and BEASLEY and J. C. DANER,* JJ.

BASHARA, P.J. Petitioner appeals from a Michi-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

gan Tax Tribunal ruling disallowing real and personal property tax exemptions in 1973 through 1976 because the buildings in question were not used solely for charitable or benevolent purposes.

Petitioner is a Michigan nonprofit organization incorporated in 1932. It operates the Boulevard Temple Home, a licensed nursing facility and home for the aged in Detroit and a similar home in Chelsea. The Chelsea Home has been tax exempt since its inception in 1905.

Petitioner completed construction of the Chelsea Village Apartments in 1972. The construction was financed with money accumulated from gifts, grants and bequests and from earnings from an endowment fund. The Chelsea Village Apartments are comprised of 24 residential units and a community center. The petitioner stated that its purpose in building the apartments was to (1) provide a better mix of ages at the Chelsea facility, and (2) to establish a more orderly progression of elderly persons through its various facilities. The petitioner considered the construction of the apartments an integral part of the operation in order to establish its entire Chelsea facility as a "full service retirement center".

The Tribunal found, however, that the apartments were not "inextricably enmeshed in the Retirement Homes operation", and were not an integral part of Retirement Homes' scheme.

The Tribunal also found that the operation of the Chelsea Village Apartments, when considered separately from the operation of plaintiff's other facilities, was not entitled to a property tax exemption. This part of the Tribunal's opinion rested largely on the holding in *Michigan Baptist Homes & Development Co v Ann Arbor,* 396 Mich 660; 242 NW2d 749 (1976).

Petitioner first claims that the Tribunal erred in holding that it must be proven beyond a reasonable doubt that the property in question qualified for the statutory exemption. Petitioner argues that the correct standard of proof is that of a preponderance of the evidence.

A petitioner bears the burden of establishing beyond a reasonable doubt that the class of exemption claimed was intended by the Legislature. *Detroit v Detroit Commercial College,* 322 Mich 142, 148-149; 33 NW2d 737 (1948). However, there is no language in the opinion which stands for the proposition that a petitioner must prove beyond a reasonable doubt that he is a *member* of an already exempt class.

Section 75 of the Administrative Procedures Act, MCL 24.275; MSA 3.560(175), states that,

"In a contested case the rules of evidence as applied in a nonjury civil case in circuit court shall be followed as far as practicable * * *."

This act has been held to apply to the "quasi-judicial" proceedings of the Michigan Tax Tribunal. See *Ann Arbor Twp v State Tax Comm,* 393 Mich 682, 686-687; 227 NW2d 784 (1975), and *Almira Twp v Benzie County Tax Allocation Board,* 80 Mich App 755, 758; 265 NW2d 39 (1978). The proper standard should have been that of proof by a preponderance of the evidence rather than proof beyond a reasonable doubt.

Petitioner also claims that the Tribunal erroneously determined that the Chelsea Village Apartments were not an integral part of its other charitable and benevolent operations.

To qualify as a tax exempt charitable institution

under MCL 211.7; MSA 7.7, the following four criteria must be met:

"(1) The real estate must be owned and occupied by the exemption claimant;

"(2) The exemption claimant must be a library, benevolent, charitable, educational or scientific institution;

"(3) The claimant must have been incorporated under the laws of this State;

"(4) The exemption exists only when the buildings and other property thereon are occupied by the claimant solely for the purposes for which it was incorporated." *Engineering Society of Detroit v Detroit,* 308 Mich 539, 550; 14 NW2d 79 (1944).

Our initial consideration is whether the apartments qualify under the second and fourth criteria.

The Tax Tribunal placed great reliance on *Michigan Baptist Homes v Ann Arbor, supra,* which was found not to be a qualifying charitable or benevolent use.

However, a comparison of the facts in this case and those found in *Michigan Baptist Homes* reveals substantial differences.

Chelsea Village Apartments were financed entirely by funds accumulated from gifts, donations and bequests.[1] No life lease with forfeiture terms is required, only a monthly residence fee.[2] Since the cost of the apartments was fully paid prior to

---

[1] "* * * [T]here is no indication that contributions have ever been solicited or received by plaintiff for use in connection with Hillside Terrace. Construction and initial start-up costs were financed by bank mortgage loans and by the sale of debentures." *Michigan Baptist Homes v Ann Arbor, supra,* 667.

[2] "Each resident of Hillside Terrace pays, upon admission, a life-lease fee * * *. The residency contract provides that, in the event of death after occupancy, the life-lease fee and all other sums paid to plaintiff shall be forfeited to plaintiff." 396 Mich 660, 667-668.

occupancy, charges were set to recover direct out-of-pocket expenses and fund replacement.[3] Residents of the Village Apartments requiring nursing care are placed in the nursing care section if necessary. Twenty-four hour emergency medical service is provided without additional charge.[4] Based on the foregoing, we conclude that *Michigan Baptist Homes* is not controlling in the case at bar.

The Tribunal also found that the Chelsea Village Apartments were not a component of Retirement Homes' charitable operation. This was based in part on the fact that the apartment was not licensed and the residents' interaction with the Chelsea Home residents was voluntary and not part of a lease commitment.

Licensing per se of a retirement home should not be an indication of charitable use. Neither MCL 211.7; MSA 7.7, dealing with realty, nor MCL 211.9; MSA 7.9, its companion as to personalty, limit their application to licensed institutions.

Similarly, the collection of fees to cover the cost of services does not change a charitable use into a noncharitable one. *Auditor General v R B Smith Memorial Hospital Ass'n*, 293 Mich 36, 38-39; 291 NW 213 (1940).[5]

The instant case is more closely analogous to *Gull Lake Bible Conference Ass'n v Ross Twp*, 351 Mich 269; 88 NW2d 264 (1958).

In *Gull Lake*, petitioners operated a religious

---

[3] "Plaintiff's mortgage and debenture obligations are met by the fees charged to its residents. The fees of Hillside Terrace were structured with the aim that the facility would be self-supporting and self-liquidating." 396 Mich 660, 667.

[4] In addition to the life-lease fee, each resident pays a monthly service charge for daily meals, maid and bed linen service.

Each resident is provided ten days of free care in the nursing center each year. This benefit may be accumulated to a maximum of 30 days. Physicians' fees, drugs, dental and optical care are extra.

[5] Although the Tribunal suggested that the apartments might be profit producing, they are in fact heavily subsidized.

retreat and also provided parking, camping, recreational and cottage facilities for a fee near the Bible study site. The Court held that the facilities, although available only to fee-paying customers, were within the charitable purpose of promoting Bible study since such services increased attendance at the center.

Respondent concedes that the purpose of the Chelsea Village Apartments is to allow residents to mix and to provide a steady supply of clients to the Chelsea home.

The attraction of clients was precisely the reason for the operation of the Gull Lake picnic, recreation, and housing facilities, which were found to be a charitable use. In view of this treatment of ancillary services in *Gull Lake,* and the foregoing analysis, we find that the apartments are within the petitioner's charitable purpose and, therefore, eligible for tax exemptions. See also *Oakwood Hospital Corp v State Tax Comm,* 374 Mich 524; 132 NW2d 634 (1965).

Reversed, no costs, a public question being involved.