SAGINAW GENERAL HOSPITAL v CITY OF SAGINAW

Docket No. 163177. Submitted November 15, 1994, at Lansing. Decided February 6, 1995, at 10:00 A.M.

Saginaw General Hospital petitioned the Tax Tribunal, seeking a determination that its child care center for the exclusive use of hospital employees and the real estate on which it is located is exempt from ad valorem taxation by the City of Saginaw because it is property used for hospital or public health purposes. The tribunal ruled that the tax exemption for property used for hospital or public health purposes, MCL 211.7r; MSA 7.7(4-o), did not apply to the child care center or the real estate. The petitioner appealed.

The Court of Appeals *held:*

The Tax Tribunal erred as a matter of law in ruling that the child care center and the real estate was not exempt from taxation under MCL 211.7r; MSA 7.7(4-o). The child care center qualifies for an exemption from taxation as property used for hospital or public health purposes. The center advances the hospital's goal of providing more cost-efficient health care and the hospital's overall mission. The child care center aids the hospital in maintaining a fully staffed hospital and providing adequate medical personnel.

Reversed.

*Braun Kendrick Finkbeiner* (by *Scott C. Strattard*), for the petitioner.

*Dorothea Johnson,* Chief Assistant City Attorney, for the respondent.

Before: WEAVER, P.J., and CORRIGAN and C. D. CORWIN,* JJ.

CORRIGAN, J. In this case of first impression, petitioner Saginaw General Hospital appeals as of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

right from a judgment of the Tax Tribunal denying tax exempt status for the Saginaw Hospital Child Care Center (the Center). We hold that the Tax Tribunal erred as a matter of law in ruling that petitioner's child care center and the real estate on which it is located was not exempt from ad valorem taxation as property used for hospital or public health purposes, MCL 211.7r; MSA 7.7(4-o).

### I. UNDERLYING FACTS

Petitioner Saginaw General Hospital, a Michigan nonprofit corporation, owns and operates a freestanding child care center for the exclusive use and benefit of hospital employees. In 1990, respondent City of Saginaw assessed and levied taxes on the Center, including the building and real estate. After unsuccessful appeals to the board of review in 1990, 1991, and 1992, the hospital petitioned the Tax Tribunal, claiming that the Center was exempt from taxation under the hospital or public purpose exemption, MCL 211.7r; MSA 7.7(4-o), to the General Property Tax Act, 1893 PA 206, MCL 211.1 *et seq.*; MSA 7.1 *et seq.* The parties submitted a stipulated statement of facts for the Tax Tribunal's consideration. In relevant part, the parties agreed:

16. The nurses, hospital personnel and other health care professionals are often required to work evening and night shifts, weekends and holidays and such scheduling requirements make it extremely difficult for these individuals to secure adequate child care.

17. The Hospital surveyed the child care services available in the Saginaw region and determined there was an acute shortage of child care to cover 7:00 A.M. starting times, weekends, holidays, eve-

nings, twelve hour shifts and availability on short notice.

\*   \*   \*

19. The lack of the necessary child care had resulted in the Hospital experiencing increased turnover, absenteeism and tardiness, and had made it difficult for the Hospital to staff unusual and holiday shifts.

20. The turnover and absenteeism resulting from the lack of adequate child care required the Hospital to expend substantial funds for recruitment and overtime pay.

\*   \*   \*

22. The Center allows the Hospital to utilize part-time employees, and thus realize a savings in overtime pay, to fill vacancies in a given shift by allowing the Hospital to call in the part-time employees on short notice.

23. The Hospital's decision to open the Center was based upon its review of the data available to it at the time and its conclusion that the Center would reduce Hospital personnel costs, reduce absenteeism, turnover and tardiness and would increase the certainty and efficiency of scheduling.

\*   \*   \*

28. Prior to the opening of the Center, the Hospital's employees relied upon part-time and full-time baby-sitters, and dispersed daycare centers. The Hospital's employees often were unable to report for work at the Hospital due to an emergency or unexpected circumstances pertaining to child care.

After a hearing, the Tax Tribunal denied petitioner's request. It ruled that use of hospital property for child care purposes does not qualify as a hospital or public health purpose.

### II. THE HOSPITAL OR PUBLIC HEALTH EXEMPTION

The sole question raised on appeal is whether

the Center qualifies for an exemption from taxation as property used for "hospital or public health purposes." In the absence of fraud, this Court reviews a decision of the Tax Tribunal to determine whether the tribunal erred in applying the law or adopted a wrong principle.[1] *Michigan Bell Telephone Co v Dep't of Treasury,* 445 Mich 470, 476; 518 NW2d 808 (1994). We hold that the Tax Tribunal erred as a matter of law in interpreting MCL 211.7r; MSA 7.7(4-o). The Center is property used for hospital or public health purposes and is therefore exempt from taxation.

In general, tax exemption statutes are to be strictly construed in favor of the taxing authority. *Michigan United Conservation Clubs v Lansing Twp,* 423 Mich 661, 664; 378 NW2d 737 (1985); *Ladies Literary Club v Grand Rapids,* 409 Mich 748, 753-754; 298 NW2d 422 (1980). "However, this rule does not mean that we should give a strained construction which is adverse to the Legislature's intent." *United Conservation Clubs, supra* at 665.

MCL 211.7r; MSA 7.7(4-o) provides:

The real estate and building of a clinic erected, financed, occupied, and operated by a nonprofit corporation or by the trustees of health and welfare funds is exempt from taxation under this act, if the funds of the corporation or the trustees are derived solely from payments and contributions under the terms of collective bargaining agreements between employers and representatives of employees for whose use the clinic is maintained. *The real estate with the buildings and other property located on the real estate on that acreage,*

---

[1] Generally, this Court also reviews the tribunal's findings of fact for support by competent, material, and substantial evidence on the whole record. *Michigan Bell Telephone Co v Dep't of Treasury,* 445 Mich 470, 476; 518 NW2d 808 (1994). However, the Tax Tribunal did not make findings of fact because the parties stipulated the facts of this case.

*owned and occupied by nonprofit trust and used for hospital or public health purposes is exempt from taxation under this act,* but not including excess acreage not actively utilized for hospital or public health purposes and real estate and dwellings located on that acreage used for dwelling purposes for resident physicians and their families. [Emphasis added.]

In granting a tax exemption to a hospital, only those facilities that are reasonably necessary for the competent operation of the hospital should receive tax exempt status. *Memorial Child Care v Dep't of Revenue,* 238 Ill App 3d 985; 604 NE2d 530 (1992) (use of the hospital child care facility was for a purpose reasonably necessary to the efficient administration of the hospital and therefore tax exempt); *Immanuel, Inc v Bd of Equalization of Douglas Co,* 222 Neb 405; 384 NW2d 266 (1986) (on-site hospital child care facility held tax exempt because it was reasonably necessary to the competent administration of the hospital).

Before the Center opened, petitioner had experienced substantial difficulty in fully staffing the hospital with necessary medical personnel. This personnel problem resulted from the absence of child care facilities in the Saginaw area capable of servicing the extraordinary child care needs of hospital employees. Physicians and nurses had been unable to secure adequate child care because they routinely were required to work emergency, weekend, holiday, and night shifts. As a result, the hospital experienced high turnover rates, tardiness, and frequent absenteeism among its employees. By providing in-hospital child care, the hospital has successfully alleviated these problems. Indeed, it seems to be undisputed that the Center advances the hospital's goal of providing more cost-efficient health care to the people of Saginaw.

Nevertheless, the Tax Tribunal denied petitioner's request because the provision of child care, standing alone, does not constitute a "hospital" or "public health" purpose. The Tax Tribunal erred in failing to consider that petitioner's child care center served to advance the hospital's overall mission. Petitioner opened the Center to mitigate its increasing difficulties in maintaining a fully staffed hospital. Thus, the Center does not merely provide child care, it allows the hospital to staff its round-the-clock shifts. The hospital does not operate the Center for the mere convenience of its employees, but because it is necessary to provide adequate medical personnel.

We consider the entire hospital facility, including the property in question, in determining whether a hospital or public health purpose is served. See, generally, anno, *Exemption from real-property taxation of residential facilities maintained by hospital for patients, staff, or others,* 61 ALR4th 1105, 1108. (Where a statutory provision makes the use of the property the test of exemption, the question is whether the primary use is reasonably necessary for fulfilling, or is reasonably incident to, the primary purpose of the organization claiming the exemption.)

Taken to its logical conclusion, the Tax Tribunal's stand-alone analysis would deny tax exempt status to a variety of hospital functions that do not involve direct patient care. Areas of the hospital used for administrative purposes, the hospital cafeteria, and even visitor waiting rooms might be denied tax exemptions. Analyzed alone, these hospital operations would not qualify as hospital or health care purposes. Yet, all these hospital functions are reasonably necessary to the .competent, efficient operation of Saginaw General Hospital.

The Tax Tribunal also analogized the child care facility with the statutory exclusion from tax exempt status of real estate used for dwelling purposes for resident physicians and their families. We think that analysis was mistaken. The origin of the hospital or public health exemption is found in 1952 PA 54, which amended the charitable exemption to the General Property Tax Act, 1893 PA 206, MCL 211.7; MSA 7.7. In *Oakwood Hosp Corp v State Tax Comm,* 374 Mich 524; 132 NW2d 634 (1965), our Supreme Court ruled that dwellings owned by a hospital for use by resident physicians and their families qualified as property used for hospital or public health purposes. The Legislature swiftly amended the hospital or public health exemption to exclude physician dwellings in 1966 PA 320. The physician dwellings exclusion is not implicated in this case because the Tax Tribunal did not conclude that the Center fell within that exclusion to the exemption. Rather, it ruled that the Center did not fall within the general scope of the exemption for hospital or public health purposes.

Under the maxim "*expressio unius est exclusio alterius,*" the express mention of one thing in a statute implies the exclusion of other similar things. *United States Fidelity & Guaranty Co v Amerisure Ins Co,* 195 Mich App 1, 6; 489 NW2d 115 (1992). The Legislature has not acted to exclude on-site child care from tax exempt status. The Tax Tribunal should not add exclusions, but should faithfully apply the statutory test.

The Tax Tribunal erred in ruling that the Saginaw Hospital Child Care Center does not qualify as tax exempt property.

Reversed.

WEAVER, P.J., did not participate