HURON RESIDENTIAL SERVICES FOR YOUTH, INC v
PITTSFIELD CHARTER TWP

Docket No. 81945. Submitted December 3, 1985, at Lansing. Decided
May 21, 1986.

Pittsfield Charter Township and Saline Township placed on the
tax rolls three separate parcels of real estate owned by peti-
tioner, Huron Residential Services for Youth, Inc., a Michigan
nonprofit corporation incorporated to operate and maintain
facilities for the rehabilitation of youth. The subject properties
are used for residential treatment programs for youths. Youths
were admitted to the program without regard to the sex, race,
creed, national origin, religion or ability to pay of the youths.
Most of the youths in the programs are referred by courts and
governmental agencies that are involved in the care and treat-
ment of abused, neglected and troubled young people. Almost
all of petitioner's funding comes from the per diem compensa-
tion received from the state for caring for the youths. The per
diem rate paid by the state is based on petitioner's costs.
Petitioner filed a petition with the Michigan Tax Tribunal,
claiming that the properties should be exempt from ad valorem
property taxation on the basis that it was a charitable institu-
tion, an educational institution or an institution providing a
governmental service. The Tax Tribunal refused to grant tax
exempt status to the subject parcels. Petitioner appealed. *Held:*

1. Real property owned and occupied by a nonprofit charita-
ble institution incorporated under the laws of the State of
Michigan is exempt from taxation while the property is being
used for the purposes for which the institution was incorpo-
rated.

2. It is clear, and the Tax Tribunal so found, that the subject
properties are owned and operated by petitioner and that
petitioner is a nonprofit corporation incorporated under the
laws of the State of Michigan. While the Tax Tribunal failed to

REFERENCES

Am Jur 2d, Charities §§ 2-4.
Am Jur 2d, State and Local Taxation §§ 362 *et seq.*
Am Jur 2d, Statutes § 275.
See the annotations in the ALR3d/4th Quick Index under Charities.

recognize that the question of whether the general character or an institution is charitable is distinct from the question of whether a particular piece of property is being used for a tax exempt purpose, it is implicit in the Tax Tribunal's findings that it found petitioner's general character to be charitable.

3. The petitioner's use of the property is consistent with its stated incorporated purpose. Although the petitioner receives almost all its funding from the per diem compensation made by the state for the care of the youths, the petitioner nevertheless renders an unrestricted public benefit such as will entitle it to tax exempt status for the subject parcels.

Reversed.

1. TAXATION — REAL PROPERTY — PERSONAL PROPERTY.

All real and personal property within the jurisdiction of the State of Michigan is subject to taxation unless expressly exempted from taxation (MCL 211.1; MSA 7.1).

2. TAXATION — TAX EXEMPTIONS — JUDICIAL CONSTRUCTION.

Tax exemption statutes are subject to a rule of strict construction in favor of the taxing authority; an intention that the Legislature intended to grant a tax exemption will never be implied from statutory language which will admit of any other reasonable construction; the intention to grant a tax exemption ought to be expressed in clear and unambiguous terms.

3. TAXATION — PROPERTY TAX — CHARITABLE INSTITUTIONS.

Real or personal property which is owned and occupied by a nonprofit charitable institution incorporated under the laws of the State of Michigan is exempt from taxation where such property is occupied by the institution solely for the purposes for which it was incorporated; the question of whether the institution is a charitable institution is a separate question from whether an individual piece of property owned by the institution is being occupied solely for the purposes for which the institution was incorporated, since the former looks to the general character of the institution while the latter looks to the specific use made of a particular piece of land (MCL 211.7o; MSA 7.7[4-1]).

4. TAXATION — PROPERTY TAX — CHARITABLE INSTITUTIONS.

An institution which is not organized for profit, which has as its purpose the promotion of the general welfare of the public, and which extends its benefits without discrimination as to race, color, or creed will generally be held to be a charitable or benevolent organization within the meaning of the tax exemption statutes.

5. Taxation — Property Tax — Charitable Institutions.

   Property used by a nonprofit institution for the purpose of providing care and treatment for troubled youth does not lose its tax exempt status under the charitable use tax exemption provision by reason of the fact that the institution is paid by the state for the services it renders where the amounts paid are based on the institution's costs, if, but for the recoupment of those costs, the property would clearly be subject to the charitable use exemption (MCL 211.7o; MSA 7.7[4-1]).

*James L. Florey,* for petitioner.

*Reading & Etter* (by *John L. Etter*), for respondents.

Before: Cynar, P.J., and Wahls and Gribbs, JJ.

Wahls, J. The issue in this appeal is whether the petitioner is entitled to an exemption from ad valorem property taxation as to three parcels of improved real property. We conclude that petitioner is entitled to an exemption as a nonprofit charitable institution and, accordingly, we reverse the Tax Tribunal's determination to the contrary.

Petitioner is incorporated as a Michigan nonprofit corporation, is licensed by the state to solicit charitable contributions, and enjoys exemption from federal taxation under IRC § 501(c)(3). Petitioner's articles of incorporation state its purpose as follows:

> To develop, maintain, operate, own, and control facilities and to develop programs to place, rehabilitate and assist selected county and area youth; and to do all acts necessary and incidental to said objective, including but not limited to fund raising, public relations, hiring of personnel, establishing policy, establishing salaries and budgets and the administration of same.

Petitioner provides residential treatment pro-

grams for youths from ages ten to eighteen years and independent living programs for youths who are ready to leave the residential programs. There are no limitations to admission based on sex, race, creed, national origin, religion or ability to pay. Petitioner occasionally accepts youths on an emergency basis without reimbursement and at least once accepted a youth on a long term basis without reimbursement. Petitioner considers for admission any youth in need of its services, regardless of the location of the youth's residence. The only reasons cited by petitioner for rejection were if the youth had an established history of frequent fire settings or running away or if petitioner determined a youth would not benefit from its programs. Most of the youths are referred to petitioner by the Department of Social Services, Department of Mental Health, juvenile and other courts and other agencies that are involved in care and treatment of abused, neglected and troubled young people.

Petitioner is administered by a board of directors who are volunteers from the community at large and receive no remuneration. Staff members are paid but receive no other remuneration except for occasional consultation fees for services they provide to other agencies. Staff members often counsel youth outside their normal working hours.

Petitioner's principal source of funding is per diem payments from the State of Michigan. The payment rates are determined by contracts with the Departments of Social Services and Public Health and are designed to cover costs only and not to generate profit. These government payments account for more than ninety-nine percent of petitioner's operating funds. Less than one percent of petitioner's operating funds are provided

by contributions and petitioner has no charitable endowment.

Petitioner operates two specialized care units (SCU), five community-based treatment programs (CCU), one supervised independent living program and one school site. The SCUS are self-contained units which provide education within the unit, house six youths and three staff and are designed for the more seriously troubled youths. The CCUS provide job training and teach survival skills in the community, also house six youths each and are designed for youths who can function in the community. Of the three parcels involved in this appeal, two are SCUS and one is a CCU. One of the SCUS has two certified special education teachers, one certified teacher's aide and a full educational program on site.

On appeal, petitioner argues that it is entitled to a property tax exemption as a charitable institution pursuant to MCL 211.7o; MSA 7.7(4-l), as an educational institution pursuant to MCL 211.7n; MSA 7.7(4k), or as an entity providing government services which should, like the government, be exempt from taxation. As we conclude that petitioner is entitled to the charitable institution exemption, we limit our discussion to that exemption alone.

The General Property Tax Act provides that all real and personal property within the jurisdiction of this state is subject to taxation unless expressly exempted. MCL 211.1; MSA 7.1. Exemption statutes are subject to a rule of strict construction in favor of the taxing authority. *Retirement Homes of the Detroit Annual Conference of the United Methodist Church, Inc v Sylvan Twp,* 416 Mich 340, 348; 330 NW2d 682 (1982). The rule is stated in 2 Cooley on Taxation (4th ed), § 672, p 1403:

An intention on the part of the legislature to grant an exemption from the taxing power of the State will never be implied from language which will admit of any other reasonable construction. Such an intention must be expressed in clear and unmistakable terms, or must appear by necessary implication from the language used, for it is a well-settled principle that, when a specific privilege or exemption is claimed under a statute, charter or act of incorporation, it is to be construed strictly against the property owner and in favor of the public. This principle applies with peculiar force to a claim of exemption from taxation. Exemptions are never presumed, the burden is on a claimant to establish clearly his right to exemption, and an alleged grant of exemption will be strictly construed and cannot be made out by inference or implication but must be beyond reasonable doubt. In other words, since taxation is the rule, and exemption the exception, the intention to make an exemption ought to be expressed in clear and unambiguous terms; it cannot be taken to have been intended when the language of the statute on which it depends is doubtful or uncertain; and the burden of establishing it is upon him who claims it. Moreover, if an exemption is found to exist, it must not be enlarged by construction, since the reasonable presumption is that the State has granted in express terms all it intended to grant at all, and that unless the privilege is limited to the very terms of the statute the favor would be extended beyond what was meant. [Quoted in *Detroit v Detroit Commercial College*, 322 Mich 142, 148-149; 33 NW2d 737 (1948).]

The charitable institution exemption is set forth in MCL 211.7o; MSA 7.7(4-l):

Real estate or personal property owned and occupied by nonprofit charitable institutions incorporated under the laws of this state with the buildings and other property thereon while occu-

pied by them solely for the purposes for which they were incorporated . . . .

It is undisputed that the property in this case is owned and occupied by petitioner and that petitioner is a nonprofit institution incorporated under the laws of this state. In dispute are the requirements that the institution be charitable and that it occupy the property solely for the purposes for which it was incorporated.

The Tax Tribunal concluded that these latter two requirements are interrelated and thus did not clearly address them separately. In this, the Tax Tribunal's analysis was deficient. The first of these two requirements looks to the corporation's general character, the second to its specific operation. A charitable corporation will be taxed for its nonexempt occupancy of property, but the loss of the exemption does not deprive the corporation of its charitable status or its exemptions as to charitable occupancy of other property. For example, in *Retirement Homes, supra,* the plaintiff received exemptions for its operation of a licensed nursing home and a licensed home for the aged, but it was denied an exemption with respect to an apartment complex for elderly residents chosen on the basis of their financial and physical independence.

The generally accepted rule as to charitable institution status is stated in *Exemption of charitable organization from taxation or special assessment,* 34 ALR 634, 635:

> In general, it may be said that any body not organized for profit, which has for its purpose the promotion of the general welfare of the public, extending its benefits without discrimination as to race, color, or creed, is a charitable or benevolent organization within the meaning of the tax exemption statutes. [Quoted in *Auditor General v R B*

Smith Memorial Hospital Ass'n, 293 Mich 36, 38-39; 291 NW2d 213 (1940).]

See also Asher Student Foundation v East Lansing, 88 Mich App 568, 572; 278 NW2d 675 (1979), lv den 406 Mich 999 (1979). Implicit in the Tax Tribunal's findings in this case is that petitioner satisfies the general rule above. In addition to finding that petitioner offered its services to youths on a nondiscriminatory basis, the Tax Tribunal stated:

> We find that Petitioner is a nonprofit corporation, and that the services which Petitioner provides are of benefit to the general public in the sense that the public will always benefit wherein provision is made for the needs of its youth.

We believe that petitioner qualifies as a charitable institution.

To receive an exemption for specific owned property under the first part of § 7o, a charitable institution must occupy and use the property in such a way that it "benefit the general public without restriction." Michigan Baptist Homes & Development Co v Ann Arbor, 396 Mich 660, 671; 242 NW2d 749 (1976). In Retirement Homes, supra, pp 348-349, the Supreme Court expanded on what unrestricted public benefit meant by adopting a description of charity employed in numerous other jurisdictions:

> "[C]harity . . . [is] a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or

maintaining public buildings or works or *otherwise lessening the burdens of government."*

The Tax Tribunal was of the opinion that petitioner offered no gift because the state pays it a per diem rate based upon its costs. This per diem funding constitutes more than ninety-nine percent of petitioner's funding. The Tax Tribunal was persuaded by respondents' argument that petitioner is a "governmental contractor" and should be viewed as a business. We cannot agree with this analysis.

The Tax Tribunal found that petitioner did not discriminate on the basis of ability to pay and had accepted youths without any reimbursement. However, as petitioner's witness explained, virtually all troubled youths in need of a residential treatment program have contacts with the state and state funding is available. The problem presented by the Tax Tribunal's analysis is where to draw the line. Will eighty-five percent or fifty-five percent or forty-five percent funding by the state permit an exemption?

First, we note that the youths clearly receive a gift. From our review of *Retirement Homes, supra,* it appears that the proper focus is whether there is a gift for the benefit of the residents. Here it is the state, not the residents, that pays for the services rendered to the residents.

Second, we note that petitioner does not charge more than the cost of its services—its charges are based on per diem rates established by the state on the basis of petitioner's costs in the prior eighteen months. Consequently, in an inflationary period, petitioner's charges will generally be less than its current costs. In *Retirement Homes, supra,* p 350, n 15, the Supreme Court stated that "a nonprofit corporation will not be disqualified for a charitable

exemption because it charges those who can afford to pay for its services as long as the charges approximate the cost of the services." If petitioner could charge, at the per diem rate, people using its services and able to pay, we think it ought also to be able to pass on such charges to the state.

In *Retirement Homes, supra,* p 351, n 16, the Supreme Court noted that, in three cases from sister jurisdictions, "a tax exemption was granted, at least in part, because many of the residents were subsidized either by the home, by the government, or by both." In the instant case, the residents were subsidized almost completely by the state because, if petitioner did not provide the service, the state itself would have been required to care for the youths. That petitioner's service fulfills a government purpose should tend to qualify it as a charitable purpose rather than disqualify it. 2 Restatement Trusts, 2d, § 368, quoted in *Baptist Homes, supra,* p 680 (COLEMAN, J., dissenting). Furthermore, the uncontradicted testimony at the Tax Tribunal hearing indicated that petitioner's programs cost the state less than if the state itself provided the programs.

We reject as unsatisfactory and unprecedented the Tax Tribunal's denial of an exemption to petitioner as a "government contractor." We find equally unsatisfactory the Tax Tribunal's second reason for denying an exemption: that the Legislature's specific exemption of certain nonprofit housing indicates that the Legislature believed that at-cost housing was not already exempt as "charitable" and, accordingly, because housing for youths was not specifically exempted, such housing cannot be exempted under the general charitable exemption.

The Tax Tribunal's analysis relies on the exemptions for housing of elderly or handicapped fami-

lies in MCL 211.7d; MSA 7.7(4a) and for charitable homes in MCL 211.7o; MSA 7.7(4-l). The tribunal believed that these specific exemptions would be redundant if at-cost housing would qualify for the general exemption. However, it should be clear that the specific exemptions, while they may overlap with the general exemption, cannot be considered as subsets of the general exemption. For example, one specific exemption is for charitable homes of fraternal societies. MCL 211.7o; MSA 7.7(4-l). This exemption does not require that the society be "incorporated under the laws of this state." Similarly, the § 7d exemption for housing of elderly or handicapped families permits the housing to be owned and operated by a nonprofit corporation "or association." The only conclusion that may be drawn from consideration of these specific housing exemptions is that the Legislature has not broadened the exemption for youth housing beyond the scope of the long-standing "charitable" exemption.

Implicit in the Tax Tribunal's opinion is the acknowledgement that petitioner qualifies for the § 7o exemption apart from two objections: that petitioner appears to be a "government contractor" and that the specific exemptions for other kinds of housing must mean that youth housing is not exempted. Because we find no merit in these two objections, we conclude that petitioner is entitled to the exemption. The record supports such a result.

Reversed. No costs, a public question being involved.