*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CALVIN THEOLOGICAL SEMINARY,

        Petitioner-Appellee/Cross-Appellant,

UNPUBLISHED
August 13, 2019

v

CITY OF GRAND RAPIDS,

        Respondent-Appellant/Cross-Appellee.

No. 343662
Tax Tribunal
LC Nos. 17-001262-TT and 17-001267-TT

Before: CAVANAGH, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

In this property tax dispute, respondent, City of Grand Rapids, denied property tax exemptions for 11 off-campus student housing properties owned by petitioner, Calvin Theological Seminary. Calvin Seminary appealed to the Tax Tribunal, asserting that the properties were exempt under MCL 211.7n (educational institution), MCL 211.7o (charitable institution), and MCL 211.7s (religious society) of the General Property Tax Act (GPTA), MCL 211.1 *et seq*. The parties filed cross-motions for summary disposition, and the Tax Tribunal granted summary disposition to Calvin Seminary, concluding that the properties were exempt under MCL 211.7o. However, the Tax Tribunal also determined that Calvin Seminary was not entitled to an exemption under MCL 211.7n or MCL 211.7s. The City now appeals to this Court, challenging the Tax Tribunal's conclusion that the properties were exempt under MCL 211.7o. Calvin Seminary has filed a cross-appeal, contesting the Tax Tribunal's conclusion that the properties were not exempt under MCL 211.7n and MCL 211.7s. On appeal, we conclude that the Tax Tribunal did not err by determining that the properties at issue were exempt under MCL 211.7o and, given this conclusion, we need not consider Calvin Seminary's additional arguments regarding MCL 211.7n and MCL 211.7s. Because the properties were exempt under MCL 211.7o, the Tax Tribunal did not err by granting summary disposition to Calvin Seminary, and we affirm.

Founded in 1876, Calvin Seminary is a private, postsecondary educational institution. As set forth in its 1991 Articles of Incorporation, the purposes for which Calvin Seminary incorporated were as follows:

1. To furnish future ministers graduate academic and theological training entirely in accord with the doctrinal standards of the Christian Reformed Church in North America;

2. To grant to students Master of Divinity, Master of Arts in Educational Ministry, Master of Arts in Missions and Church Grown, Master of Theology, Master of Ministry, Master of Theological Studies, Doctor of Philosophy degrees and other graduate degrees based on complete of such requirements as shall be determined by the Board of Trustees;

3. To grant such other certificates or diplomas for less than four years training as are appropriate to like instruction;

4. To do all things necessary or incidental to or usually done by similar types of institutions;

5. The corporation shall not discriminate on the basis of race, color, sex, age, national or ethnic origin, or disability.

In keeping with its Articles of Incorporation, Calvin Seminary operates a seminary, training future ministers of the Christian Reformed Church. However, in addition to its minister-candidacy program, Calvin Seminary offers nonministry academic programs, including master's degree and doctorate degree programs, as well as certificate and degree programs for less than four years of training. Under MCL 450.170, Calvin Seminary is authorized to conduct business in Michigan as "a class Y educational corporation" offering Doctors, Masters, Bachelors, and Associates degrees as well as certificate and diploma programs. Calvin Seminary is also a nonprofit organization with tax-exempt status under § 501(c)(3) of the Internal Revenue Code, 26 USC 501(C)(3).

Calvin Seminary typically does not make an annual profit. Students pay tuition, fees, and board, but according to Calvin Seminary's controller, David Bardolph, Calvin Seminary's "total receipt from students' payments of tuition, fees, and board, are consistently less than the total cost of the education and services that it provides to its students." According to Bardolph, Calvin Seminary "is predominantly funded by donations, grants, gifts, and denominational ministry shares, not by tuition or fees paid by its students." Calvin Seminary also receives income from investments.

Important to this appeal, Calvin Seminary offers both on- and off-campus housing for it students. Of a total of 104 units, 62 units are off-campus, located approximately three miles from campus on 11 parcels on Batchawana Street SE and Englewood Avenue SE in Grand Rapids. The off-campus housing is almost always rented by students; however, a visiting faculty member may also "occasionally" use an apartment. Students residing in the school's housing—whether on- or off-campus—enter into an agreement with Calvin Seminary, and they pay rent, which includes utilities, trash/recycling, laundry facilities, and internet. Particularly with the

inclusion of utilities, Calvin Seminary offers its off-campus housing at "well below market rates" when compared to comparable nearby properties. Indeed, Calvin Seminary aims to offer student housing at rates 20 to 25% below market-rate, and when considered as a whole, the off-campus housing typically operates at an annual loss.

Under the housing agreement, Calvin Seminary agrees to provide maintenance on the apartments, including snow removal. Calvin Seminary also reserves certain rights to access the apartments, and the housing director has "key access" to every unit. Calvin Seminary also maintains two storage sheds on the off-campus properties, containing items of outdoor maintenance, and Calvin Seminary employees "regularly" access the storage sheds on the properties. Calvin Seminary also has a storage container at the Englewood Ave property, and Calvin Seminary maintains a supply room in the common laundry room at the Englewood Ave properties. The supply room contains maintenance supplies as well as a desk and computer. Calvin Seminary employees "frequently" access the room and make use of the computer and desk with "some regularity." Maintenance staff employees are "physically present" on the off-campus properties "virtually every day, performing grounds maintenance, cleaning hallways and common areas, or responding to calls from student residents." Additionally, approximately 29 of the 70 students who live in off-campus student housing are employed by Calvin Seminary in some capacity, and students who live in the properties may also serve as "block captains" on behalf of Calvin Seminary to monitor the properties for security purposes.

At issue in the present case is Calvin Seminary's off-campus housing and, in particular, whether the off-campus properties are tax-exempt under the GPTA. For approximately 20 years, the properties were tax exempt, but in 2017, the City denied the properties tax-exempt status. Calvin Seminary appealed the City's decision to the March Board of Review, which affirmed the City's assessment decision. Calvin Seminary then appealed to the Tax Tribunal, which granted summary disposition to Calvin Seminary on the basis of its determination that the properties were exempt under MCL 211.7o. However, the Tax Tribunal concluded that properties were not exempt under MCL 211.7n and MCL 211.7s.

The City now appeals, and Calvin Seminary has filed a cross-appeal. On appeal, the City argues that Calvin Seminary is not entitled to an exemption under MCL 211.7o because (1) it is not a charitable institution, (2) it does not occupy the properties, and (3) it does not occupy the properties for the purposes for which it was incorporated. In contrast, Calvin Seminary asserts that, while the Tax Tribunal correctly determined that it was exempt under MCL 211.7o, the Tax Tribunal erred by not also concluding that the exemptions in MCL 211.7n and MCL 211.7s applied to the properties.

"This Court reviews de novo a lower tribunal's decision on a motion for summary disposition." *TRJ & E Props, LLC v Lansing*, 323 Mich App 664, 670; 919 NW2d 795 (2018). "A party is entitled to summary disposition under MCR 2.116(C)(10) if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id*. (footnote omitted). "This Court's review of a decision by the Tax Tribunal is limited." *Id*. "When a party does not dispute the facts or allege fraud, this Court reviews whether the tribunal made an error of law or adopted a wrong principle." *Id*. (quotation marks and citation omitted). Questions involving statutory interpretation are reviewed de novo. *Id*.

Under the GPTA, "all property, real and personal, within the jurisdiction of this state, not expressly exempted, shall be subject to taxation." MCL 211.1. "Tax exemptions are strictly construed in favor of the taxing authority." *Spranger v City of Warren*, 308 Mich App 477, 479; 865 NW2d 52 (2014) (quotation marks and citation omitted). The party claiming an exemption must prove, by a preponderance of the evidence, entitlement to the exemption. *Id*.

We first consider the City's appeal regarding the charitable exemption set forth in MCL 211.7*o*. Under MCL 211.7*o*(1), "[r]eal or personal property owned and occupied by a nonprofit charitable institution while occupied by that nonprofit charitable institution solely for the purposes for which that nonprofit charitable institution was incorporated is exempt from the collection of taxes under this act." To determine whether a claimant is entitled to exemption under this provision, the following three requirements must be met:

> (1) The real estate must be owned and occupied by the exemption claimant;
>
> (2) the exemption claimant must be a nonprofit charitable institution; and
>
> (3) the exemption exists only when the buildings and other property thereon are occupied by the claimant solely for the purposes for which it was incorporated. [*Wexford Med Group v City of Cadillac*, 474 Mich 192, 203; 713 NW2d 734 (2006).]

On appeal, the City asserts that Calvin Seminary has not established any of the three *Wexford* requirements.

## A. CHARITABLE INSTITUTION

Initially, we conclude that the City waived its claim that Calvin Seminary is not a charitable institution, and for this reason, we will not address this issue on appeal.

> Michigan generally follows the "raise or waive" rule of appellate review. Under [this state's] jurisprudence, a litigant must preserve an issue for appellate review by raising it in the trial court. Although this Court has inherent power to review an issue not raised in the trial court to prevent a miscarriage of justice, generally a "failure to timely raise an issue waives review of that issue on appeal." [*Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (citations omitted).]

In the Tax Tribunal, the City made no challenge to Calvin Seminary's status as a charitable institution. More significantly, the City expressly declared its intent *not* to pursue a challenge to Calvin Seminary's status as a charitable institution. The City repeatedly told the Tax Tribunal that it "may assume" that Calvin Seminary constituted a nonprofit charitable institution. By deliberately choosing to forego an argument on this point in the Tax Tribunal, the City intentionally abandoned this issue, and thereby waived its arguments regarding whether Calvin Seminary qualifies at a charitable institution. See *Roberts v Mecosta Co Gen Hosp*, 466

Mich 57, 69; 642 NW2d 663 (2002) (quotation marks and citations omitted); *Dep't of Licensing & Regulatory Affairs v Gordon*, 323 Mich App 548, 562; 919 NW2d 77 (2018).[1]

## B. OCCUPIED BY THE CLAIMANT

On appeal, as in the Tax Tribunal, the City maintains that Calvin Seminary does not occupy the off-campus properties. Essentially, the City maintains that the students—not Calvin Seminary—occupy the apartments. This argument is without merit.

Under *Wexford*'s three-part test for whether an organization is entitled to an exemption under MCL 211.7*o*, the first criteria is that the property "must be owned and occupied by the exemption claimant." *Wexford*, 474 Mich at 203. In this context, to occupy the property, the charitable institution "must at a minimum have a regular physical presence on the property." *Liberty Hill Housing Corp v Livonia*, 480 Mich 44, 58; 746 NW2d 282 (2008). This requirement is not met merely by having a "right to occupy" the property, *id*. at 58 n 15, and an owner of property does not occupy the property simply by leasing the property to tenants for their own personal use, even if the tenancy is consistent with the organization's charitable purposes, *id*. at 58-59, 62. For example, in *Liberty Hill*, the Court concluded that a nonprofit corporation, which provided housing alternatives for low-income individuals and persons with disabilities, did not occupy the properties; rather, the tenants actually occupied the properties. *Id*. at 46, 58. In determining whether a charitable institution maintains a regular physical presence on the property, the *Liberty Hill* Court also provided the following guidance:

> Charitable institutions . . . are not merely inanimate bodies; they are made up of people. A charitable institution's members, employees, or volunteers may dwell on the property or at least be habitually present on the property, which is consistent with the meaning of "reside." The dissent contends that a charitable institution may not "reside in" certain property, such as a swimming pool. Although one obviously cannot dwell in a swimming pool, one can maintain a regular physical presence at the pool (e.g., by habitually swimming there) or on the property that contains the pool. Either would generally be sufficient to occupy the property. [*Id*. at 60.]

In this case, considering the undisputed evidence and applying the understanding of "occupied" set forth in *Liberty Hill*, the Tax Tribunal concluded that Calvin Seminary "occupied" the off-campus properties in question. Although recognizing that students and

---

[1] Contrary to the City's arguments, the issue is not a purely legal question, and manifest injustice would not result if we decline to address this issue on appeal. See *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 96; 693 NW2d 170 (2005). There are underlying factual questions involved, and it would be decidedly unfair to allow the City to sandbag Calvin Seminary on appeal with arguments to which Calvin Seminary did not have reason to respond factually in the Tax Tribunal. See *Walters*, 481 Mich at 388**.** "To hold otherwise would contravene the longstanding rule against a party harboring error as an appellate parachute." *Polkton*, 265 Mich App at 96 (quotation marks and citation omitted).

occasional visiting faculty members actually lived in the apartments, the Tax Tribunal found that Calvin Seminary occupied the properties through its employees, including student-employees who resided in the apartments and maintenance staff who were present on the properties "virtually every day." More fully, the Tax Tribunal contrasted the student housing from the apartments in *Liberty Hill*, noting that Calvin Seminary did not simply "rent the student housing and then leave its students to their own devices." Instead, Calvin Seminary retained a right of access to the apartments, including keys and the right to enter apartments; and, more importantly, Calvin Seminary maintained a regular physical presence through its employees, including student-employees as well as other staff members who were regularly on the properties performing grounds maintenance, cleaning hallways and common areas, and responding to calls from residents. Given the uncontested evidence regarding the activities of Calvin Seminary's employees on the property, the Tax Tribunal did not err by concluding that Calvin Seminary maintains a regular physical presence on the properties through its employees.

In contrast to these conclusions, the City notes that there are 11 properties in question and that, while Calvin Seminary maintains a shed, storage, and a desk with a computer, it is unclear on which of the 11 properties these items are located. Although it is unclear where the shed and other items are precisely located, this does not undermine the Tax Tribunal's conclusions because the presence of Calvin Seminary's employees was not limited to use of these items. Rather, as found by the Tax Tribunal and supported by the evidence, the maintenance staff were on the properties virtually every day performing grounds maintenance, cleaning hallways and common areas, and responding to calls from residents. On these facts, the Tax Tribunal did not err by concluding that Calvin Seminary occupies the properties through its employees.

## C. OCCUPIED FOR THE PURPOSES OF INCORPORATION

Finally, the City argues that, even if Calvin Seminary occupies the properties, it does not occupy the properties solely for the purposes of which Calvin Seminary was incorporated. The City maintains that Calvin Seminary's purpose is to provide religious education and that providing housing for students—three miles from campus—falls outside of this purpose. To the extent that Calvin Seminary's Articles of Incorporation state its purposes for incorporating as including "all things necessary or incidental to or usually done by similar types of institutions," the City maintains that this provision cannot be used to boundlessly extend Calvin Seminary's purpose for incorporating.

Under *Wexford*'s three-part test for an exemption under MCL 211.7*o*, the third criteria is that "exemption exists only when the buildings and other property thereon are occupied by the claimant solely for the purposes for which it was incorporated." *Wexford*, 474 Mich at 203. In determining whether an organization occupies properties for the purposes for which it is incorporated, the inquiry is "largely governed by the purposes set forth in its articles for its incorporation." *Gull Lake Bible Conference Ass'n v Ross Twp*, 351 Mich 269, 275; 88 NW2d 264 (1958). The pertinent question is whether the property is "occupied in furtherance of and for the purposes for which plaintiff was incorporated[.]" *Oakwood Hosp Corp v Mich State Tax Comm*, 374 Mich 524, 530; 132 NW2d 634 (1965).

Under this approach, use of property that is necessary to fulfill the organization's purpose constitutes occupying the property for the purposes for which the claimant was incorporated.

See *Liberty Hill*, 480 Mich at 52-54; *Saginaw Gen Hosp v Saginaw*, 208 Mich App 595, 600; 528 NW2d 805 (1995) ("Where a statutory provision makes the use of the property the test of exemption, the question is whether the primary use is reasonably necessary for fulfilling, or is reasonably incident to, the primary purpose of the organization claiming the exemption.") (quotation marks and citation omitted). For example, property has been found to be occupied solely for the purpose for which the claimant was incorporated when there was some residential use of the property incidental to the purpose of incorporation such as a hospital providing housing for doctors, *Oakwood Hosp Corp*, 374 Mich at 530, or a school providing housing for persons whose services were necessary to the school, *Webb Academy v Grand Rapids*, 209 Mich 523, 539; 177 NW 290 (1920). Similarly, in *Gull Lake*, 351 Mich at 275, the Court considered an entity incorporated to promote gatherings for study of the Bible, and it concluded that property used as residences for participants and employees was occupied solely for the purpose for which the organization was incorporated, explaining:

> On reference [to the Articles of Incorporation] we find that it is not only the purpose of the plaintiff to conduct gatherings for the study of the Bible, et cetera, but it is also its purpose to promote such gatherings. Looking at the situation in the light of this latter purpose, it may be logically concluded that in order to obtain satisfactory attendance to its conference, plaintiff found it advisable and necessary to provide those attending with living accommodations, recreational facilities and all of the other services offered by plaintiff and made possible through the use and occupancy of the land in question by plaintiff in the manner in which they do use and occupy such land. The charges made for such services and facilities approximate the cost thereof to plaintiff, and the income derived therefrom should and does not, in the opinion of this court, detract from the charitable character of the plaintiff organization. [*Id.*]

Applying these principles in this case, the Tax Tribunal concluded that Calvin Seminary occupied the subject properties solely for the purposes for which it was incorporated. Looking first to the Articles of Incorporation, the Tax Tribunal concluded that Calvin Seminary's charitable purposes were to educate future ministers, grant graduate degrees, and to "all things necessary and incident to or usually done by similar types of institutions." In view of these purposes, the Tax Tribunal reasoned that provision of student housing was necessary, incidental, and usually done by similar educational institutions. And, analogizing the student housing in this case to *Webb*, *Gull Lake*, and *Oakwood Hosp*, the Tax Tribunal concluded that the property was used solely for the purposes for which Calvin Seminary incorporated because student housing was necessary to fulfill Calvin Seminary's purposes.

The Tax Tribunal's reasoning is sound, and the City has not shown error. Contrary to the City's arguments, recognizing that student housing serves the charitable purposes for which Calvin Seminary incorporated does not enable Calvin Seminary to "boundlessly extend" its purposes. Rather, as in *Webb*, *Gull Lake*, and *Oakwood Hosp*, the student housing—which is provided in close proximity to the school at below-cost prices—enables students to attend Calvin Seminary and such housing is necessary for Calvin Seminary to fulfill its purposes. Cf. *State v*

*Carleton College*, 154 Minn 280, 286; 191 NW 400 (1923) ("That dormitories for students are reasonably necessary for institutions like defendant is beyond doubt. For years such have been maintained in this and other states whenever means were available.").[2] Indeed, that the off-campus housing is incidental and auxiliary to Calvin Seminary's main purpose is strongly supported by the fact that, although students pay rent, the rates are below market and Calvin Seminary actually loses money on the off-campus housing. In other words, this is not a separate for-profit venture used to subsidize Calvin Seminary's nonprofit activities; rather, the below-cost student housing is incidental to, and necessary, for Calvin Seminary's charitable purposes. See *Gull Lake*, 351 Mich at 274-275; *Saginaw Gen Hosp*, 208 Mich App at 600.

Moreover, contrary to the City's arguments, although the housing is off-campus rather than contiguous to Calvin Seminary's main property, this does not undermine the Tax Tribunal's conclusions. Cf. *Carleton College*, 154 Minn at 286 ("The fact that [the housing] is not upon the campus seems to us wholly unimportant."). Quite simply, the question is whether Calvin Seminary's occupancy of the off-campus properties was necessary for the furtherance of the purposes for which Calvin Seminary was incorporated, see *Liberty Hill*, 480 Mich at 52-54, not whether the properties are contiguous to the main campus. In short, despite the separation between the off-campus housing and the main campus, the Tax Tribunal did not err by concluding that the housing is necessary for Calvin Seminary to fulfill its charitable purposes. See *Oakwood Hosp Corp*, 374 Mich at 530; *Gull Lake*, 351 Mich at 275. Accordingly, the Tax Tribunal did not err by concluding that Calvin Seminary occupies the properties for the purposes for which it was incorporated.

In sum, the Tax Tribunal did not make an error of law or adopt a wrong principle. Given the undisputed evidence in this case, the Tax Tribunal did not err by concluding that the properties in question were exempt under MCL 211.7*o* and by granting summary disposition to Calvin Seminary. Given our conclusion that the Tax Tribunal did not err by finding Calvin Seminary exempt under MCL 211.7*o*, we need not address Calvin Seminary's additional arguments pertaining to MCL 211.7n and MCL 211.7s. See *Huron Residential Servs for Youth, Inc v Pittsfield Charter Twp*, 152 Mich App 54, 58; 393 NW2d 568 (1986); *Christian Reformed Church in North America v Grand Rapids*, 104 Mich App 10, 22-23; 303 NW2d 913 (1981).

Affirmed.

/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien

---

[2] "Although not binding on this Court, caselaw from sister states may be considered as persuasive authority." *In re Estate of Vansach*, 324 Mich App 371, 387 n 7; 922 NW2d 136 (2018).